1  CAROTHERS DISANTE & FREUDENBERGER LLP
      Dan M. Forman, State Bar No. 155811
2      dforman@cdflaborlaw.com
      Erin Owen, State Bar No. 185371
3      eowen@cdflaborlaw.com
   707 Wilshire Boulevard, Suite 5150
4  Los Angeles, CA 90017
   Telephone:  (213) 612-6300
5
   Attorneys for Plaintiff
6  ALBERT'S ORGANICS, INC.

7

8                  **UNITED STATES DISTRICT COURT**

9                  **NORTHERN DISTRICT OF CALIFORNIA**

10

11  ALBERT'S ORGANICS, INC., a California   ) Case No. 4:19-cv-07477-PJH
    Corporation,                            )
12                                          ) **PLAINTIFF ALBERT'S ORGANICS,**
                     Plaintiff,             ) **INC.'S OPPOSITION TO DEFENDANTS'**
13          v.                              ) **MOTION TO DISMISS THE COMPLAINT**
                                            )
14  GREG HOLZMAN, an individual;            ) Date:   March 4, 2020
    TERRAFRESH ORGANICS, LLC, a             ) Time:   9:00 a.m.
15  California Limited Liability Corporation;) Ctrm:   3
    STEVE AKAGAKI, an individual; and JASON )
16  LAFFER, an individual,                  )
                                            )
17                  Defendants.             )
                                            )
18                                          )

19

20

21

22

23

24

25

26

27

28

CAROTHERS DiSANTE &
FREUDENBERGER LLP

1578967.1

Case No.  4:19-cv-07477-PJH
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3

4

STATEMENT OF ISSUES TO BE DECIDED ............................................................. 1

5

I. INTRODUCTION ........................................................................................................ 2

6

II. DEFENDANTS' MOTION SHOULD BE OVERRULED IN ITS ENTIRETY ....................... 3

7

    A.    Albert's Complaint Alleges Cognizable Counts Against Each Defendant ...................................................................................................... 3

8

    B.    Albert's Trade Secret Claims Meet The *Iqbal/Twombly* Pleading Standard ..................................................................................................... 5

9

10

          1.    Albert's Sufficiently Identified Its Trade Secrets ........................ 6

11

          2.    Defendants Are On Notice of Improper Acts of Misappropriation ........................................................................ 8

12

    C.    Albert's Non-Trade Secret Counts Are Adequately Pled and Are Not Subject to CUTSA Supersession, Thus, Defendants' Motion to Dismiss Should Be Denied ...................................................................... 10

13

14

          1.    Defendants' CUTSA "Preemption" Argument Fails ................. 10

15

               a.    CUTSA Statutory Exemption for Breach of Contract and Statutory Claims-Count 3 ....................................... 10

16

               b.    Non-Trade Secret Tort Claims Arise Out Of Allegations of Independent Facts and Are Not Subject to Dismissal on 12(b)(6). ................................................ 10

17

18

    D.    Albert's Non-Trade Secret Claims Are Adequately Pled and Put Defendants on Notice of the Counts ...................................................... 12

19

          1.    Count 3 - Breach of Contract Against Holzman, Akagaki and Laffer ....................................................................................... 12

20

21

          2.    Tortious Inducement to Breach Contract (Count 4) and Tortious Interference with Business Relations/Conduct (Count 5) ................................................................................... 13

22

23

               a.    Count 4 - Tortious Inducement to Breach Contract ........................ 15

24

               b.    Count 5 - Tortious Interference with Business Relations/Contract .......................................................... 15

25

26

          3.    Counts 6 and 7: Breach of Duty of Loyalty and Inducement to Breach Duty of Loyalty Is Well Pled ....................................... 16

27

               a.    Individual Defendants' Actions Breached Their Duty- -Albert's Does Not Base Claims on Plans to Compete. ................ 16

28

1578967.1

# TABLE OF CONTENTS (cont.)

**Page**

        b.    Economic Loss Rule Does Not Apply ............................................ 17

        c.    Count 6: Breach of Duty of Loyalty ................................. 17

        d.    Count 7: Tortious Inducement of Breach of Loyalty ..................... 18

    4.    Count 8: Unfair Competition ....................................................... 19

    5.    Count 9: Interference with Prospective Economic Advantage ................... 20

E.    In the Event This Court Dismisses or Strikes Any Portion of The Complaint, Albert's Should Be Granted Leave to Amend ..................................... 22

III. CONCLUSION ................................................................................. 22

1578967.1

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Alta Devices, Inc. v. LG Electronics, Inc.*
  343 F.Supp.3d 868 (N.D. Cal. 2018) ................................................................. 5, 7

5

*Angelica Textile Services, Inc. v. Park*
  220 Cal.App.4th 495 (2013) ............................................... 3, 10, 11, 19, 20, 21

6

7

*Arista Records, LLC v. Doe 3*
  604 F.3d 110 (2d Cir. 2010) ............................................................................. 14

8

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ................................................................ 2, 4, 5, 10, 14, 15

9

10

*Bancroft-Whitney Co. v. Glen*
  64 Cal.2d 327 (1966) ..................................................................... 2, 3, 9, 16

11

*Beckton, Dickinson & Co. v. Cytek Biosciences, Inc.*
  18-cv-00933-MMC, 2018 WL 2298500 (N.D. Cal. May 21, 2018) ................... 5

12

13

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007) ..................................................................... 2, 4, 5, 10, 14

14

*Boykin v. KeyCorp.*
  521 F.3d 202 (2d Cir. 2008) ............................................................................. 14

15

16

*Brocade Communications Sys. v. A10 Networks*
  873 F.Supp.2d 1192 (N.D. Cal. 2012) ............................................................... 6

17

*Bryant v. Mattel, Inc.*
  No. CV 04-9049 (RNBx), 2010 WL 3705668 (C.D. Cal. Aug. 2, 2010) ........... 11

18

19

*Cellars v. Pacific Coast Packaging, Inc.*
  189 F.R.D. 575 (1999) ............................................................................. 2, 4, 18

20

*Cel-Tech, Inc. v. Los Angeles Cellular Co.*
  20 Cal.4th 163 (1999) ...................................................................................... 19

21

22

*Chinatown Neighborhood Ass'n v. Harris*
  794 F.3d 1136 (9th. Cir. 2015) ......................................................................... 22

23

*ChromaDex, Inc. v. Elysium Health, Inc.*
  369 F.Supp.3d 983 (C.D. Cal. 2019) .......................................... 3, 4, 10, 16, 18

24

*Conley v. Gibson*
  355 U.S. 41 (1957) ............................................................................................. 4

25

26

*Courtesy Temporary Service, Inc. v. Camacho*
  222 Cal.App.3d 1278 (1990) .............................................................................. 6

27

*Dixie v. Virga*

28

1578967.1

1

**TABLE OF AUTHORITIES (cont.)**

2

<u>**Page(s)**</u>

3        No. 2:12-CV-2626-MCE-DAD, 2015 WL 412298 (E.D. Cal. Jan. 30, 2015) ................. 14

4   *Doe v. United States*
        58 F.3d 494 (9th Cir. 1995) ............................................................................................. 22
5

6   *Erickson v. Pardus*
        551 U.S. 89 (2007)............................................................................................................. 4

7   *Fowler v. Varian Associates, Inc.*
        196 Cal.App.3d 34 (1987) ................................................................................................ 16
8

9   *GCIU Employer Retirement Fund v. Quad/Graphics, Inc.*
        2:16-cv-00100-ODW (AFMx), 2016 WL3027336 (C.D. Cal. May 26, 2016) ........ 2, 14, 21

10  *Gilligan v. Jamco Development Corp.*
        108 F.3d 246 (9th Cir. 1997) ........................................................................................ 3, 22
11

12  *Henry v. Daytop Village, Inc.*
        42 F.3d 89 (2d Cir. 1994) .................................................................................................. 4

13  *Intermedics, Inc. v. Ventritex, Inc.*
        822 F.Supp. 634 (N.D. Cal. 1993).................................................................................... 18
14

15  *Ivanoff v. Bank of America*
        9 Cal.App.5th 719 (2017) ................................................................................................. 19

16  *Langan v. United Servs. Auto Ass'n*
        69 F.Supp.3d 965 (N.D. Cal. 2014) .................................................................................. 12
17

18  *Lillge v. Verity*
        2008 U.S. Dist. LEXIS 26164 (N.D. Cal. 2008) ............................................................... 6

19  *Loop AI Labs Inc. v. Gatti*
        No. 15-CV-00798-HSG, 2015 WL 5158461 (N.D. Cal. Sept. 2, 2015)............................ 10
20

21  *Lopez v. Smith*
        203 F.3d 1122 (9th Cir. 2000) ...................................................................................... 5, 22

22  *Marolda v. Symantec Corp.*
        672 F.Supp.2d 992 (N.D. Cal. 2009)................................................................................ 14
23

24  *McKell v. Washington Mut., Inc.*
        142 Cal.App.4th 1457...................................................................................................... 12

25  *Morlife v. Perry*
        56 Cal.App.4th 1514 (1997) ........................................................................................... 6, 7
26

27  *N. Star Int'l v. Ariz. Corp. Comm'n*
        720 F.2d 578 (9th Cir. 1983) ............................................................................................. 3

28  *Nasrawi v. Buck Consultants LLC*

Case No.  4:19-cv-07477-PJH
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS

1578967.1

**TABLE OF AUTHORITIES (cont.)**

**Page(s)**

231 Cal.App.4th 328 (2014) ............................................. 18

*Neitzke v. Williams*
490 U.S. 319 (1989).......................................................... 4

*North County Communications Corp. v. Verizon Global Networks, Inc.*
685 F. Supp.2d 1112 (2010) ............................................ 12

*Parks Sch. of Bus. v. Symington*
51 F.3d 1480 (9th Cir. 1995) .................................. 4, 5, 22

*Pellerin v. Honeywell Intern., Inc.*
877 F.Supp.2d 983 (S.D. Cal. 2012)............................... 14

*Pyro Spectaculars North, Inc. v. Souza*
861 F.Supp.2d 1079 (E.D. Cal. 2012) .............................. 7

*Qingdao Tang Buy International Import & Export Company, Limited v. Preferred Secured Agents, Inc.*
15-cv-00624-LB, 2016 WL 6524396 (N.D. Cal. Nov. 3, 2016) ......................................... 12

*Readylink Healthcare v. Cotton*
126 Cal.App.4th 1006 (2005) ............................................ 6

*Saul v. U.S.*
928 F.3d 829 (9th Cir. 1991) ........................................... 22

*Scheuer v. Rhodes*
416 U.S. 232 (1974)........................................................... 4

*Sierra View Local Health Care Dist. v. Influence Health, Inc.*
No. 1:15-cv-00689-DAD-SABm 2016 WL 2346799 (E.D. Cal. May 4, 2016)................ 12

*Titan Global LLC v. Organo Gold Intern., Inc.*
No.: 12-CV-2104-LHK, 2012 WL 6019285 (N.D. Cal. 2012) ........................................ 11

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*
117 F.Supp.3d 1092 (C.D. Cal. 2017) ............................. 17

*Vascular Imaging Professionals, Inc. v. Digirad Corporation*
401 F.Supp.3d 1005 (S.D. Cal. 2019)......................... 20, 21

*Vendavo, Inc. v. Price f(x) AG*
No. 17-cv-06930-RS, 2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ................................. 5

*Waldo v. Eli Lilly & Co.*
No. CIV S-13-0789 LKK, 2013 WL 5554623 (E.D. Cal. Oct. 8, 2013) ........................... 14

*Wang v. Golf Tailor, LLC*
No. 17-cv-00898-LB, 2017 WL 2861111 (N.D. Cal. July 5, 2017)............................... 6, 11

Case No.  4:19-cv-07477-PJH
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

1578967.1

<strong><u>TABLE OF AUTHORITIES (cont.)</u></strong>

<strong><u>Page(s)</u></strong>

*Waymo LLC v. Uber Technologies, Inc.*
  256 F. Supp.3d 1059 (N.D. Cal. June 8, 2017)................................................................. 11

**<u>Statutes</u>**

Cal. Civ. Code § 3426.7.................................................................................................... 10

California Business and Professions Code § 17200 .............................................. 19, 20

Fed.R.Civ.P. 8(a) .......................................................................................................... 3, 21

Fed.R.Civ.P. 8(e)(2)................................................................................................... 2, 4, 18

Labor Code § 2860 ........................................................................................................ 16, 17

Labor Code § 2863 ........................................................................................................ 16, 17

1578967.1

**<u>STATEMENT OF ISSUES TO BE DECIDED</u>**

Defendants oversimplify the statement of issues raised by their Motion to Dismiss.  Indeed, the issues more accurately are four-fold:

1.       Whether the factual allegations of the Complaint, taken as true and construed in the light most favorable to plaintiff, plausibly give rise to an entitlement to relief;

2.       Whether the contract and tort claims are displaced by the California Uniform Trade Secret Act;

3.       Whether the non-trade secret tort claims, which may be related to a trade secret misappropriation, are independent and based on facts distinct from the facts supporting misappropriation; and,

4.       Should the Court rule that some cause of action be dismissed or stricken, whether Defendant has proven the futility of amendment *beyond doubt* that Plaintiff can prove no set of facts that would entitle it to relief despite the liberal standard to grant Plaintiff leave to amend.

Carothers DiSante & Freudenberger LLP

1578967.1

Case No.  4:19-cv-07477-PJH
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

# I. <u>INTRODUCTION</u>

Defendants' Motion to Dismiss ignores the plain and simple allegations of fact raised by Albert's Complaint in what appears to be an attempt to delay discovery and responsibility for their wrongful conduct.  The editorial comments running through the Motion to Dismiss attempt to distract from the plain statement of factually sufficient allegations underlying Albert's claims.  Albert's Complaint sets forth ultimate fact allegations well within FRCP 8 that are sufficient to give Defendants notice of the bounds of each claim.  Defendants also fail to address the black-letter law that a complaint may plead alternative theories and, even, inconsistent facts to survive a Motion to Dismiss.  Fed.R.Civ.P. 8(e)(2); *Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575, 578-579 (1999).

Further, although the law is clear that a motion to dismiss tests the sufficiency of the allegations, and does not weigh the credibility of the Complaint, Defendants conflate these issues by suggesting that Albert's was not able to prove its case at the TRO hearing.  However, the proper standard, the *Iqbal/Twombly* standard, measures whether Albert's set forth sufficient allegations of fact to support the requisite elements of each claim and the Court should make that determination without prematurely considering whether Albert's will ultimately prevail on its claims.  The plausibility standard accepts Albert's fact allegations as true and that those factual allegations, if true, demonstrate that wrongdoing is plausible.  Further, Defendant seeks to create new law by precluding Albert's from alleging facts on information and belief, especially, where, as here, the underlying evidence is peculiarly within the defendants' possession.  *See, e.g., GCIU Employer Retirement Fund v. Quad/Graphics, Inc.*, 2:16-cv-00100-ODW (AFMx), 2016 WL3027336, *3 (C.D. Cal. May 26, 2016).  Albert's is not required, at this preliminary pre-discovery stage, to demonstrate a probability of success.

Defendants attempt to deflect their misdeeds under the guise of "preparing to compete", citing to one portion of *Bancroft-Whitney Co. v. Glen*, 64 Cal.2d 327, 346 (1966).  However, of much greater import, the California Supreme Court held that a defendant former officer, such as Holzman, is liable for breach of a fiduciary duty if, before or after leaving the employment, he causes fellow employees to breach their contracts with the employer.  *Id.*, n. 10.

Carothers DiSante & Freudenberger LLP

1578967.1

1    In *Bancroft-Whitney,* the California Supreme Court reasoned that a former employee may

2  make arrangements to compete with his principal before quitting, but that he cannot use his

3  employer's confidential information in competition and may not solicit customers for the rival

4  business before the end of his employment. *Bancroft-Whitney* court held that the former employee

5  breached his fiduciary duties to his former employer as a matter of law because the undisputed

6  evidence showed a consistent course of conduct designed to poach the most valuable employees

7  from the plaintiff for the competitor.  *Id.,* 347.

8    Defendants seek to avoid discovery that will show the full scope of their wrongdoing and

9  the damages to Albert's.  To support this effort, Defendants take aim at the non-trade secret claims

10  asserting that by Statement of Issues No. 2 all such claims are "preempted" by CUTSA.  Of course,

11  Defendants hide the statutory exemptions to CUTSA supersession and prevailing California

12  caselaw, *Angelica Textile Services, Inc. v. Park*, 220 Cal.App.4th 495, 508-511 (2013), holds that

13  claims related to a misappropriation of trade secrets based on facts distinct from the

14  misappropriation, as plead by Albert's, remain viable and require discovery under California law.

15  Judge Carney's recent order in *ChromaDex, Inc. v. Elysium Health, Inc.,* 369 F.Supp.3d 983 (C.D.

16  Cal. 2019) denied an almost identical motion to dismiss breach of contract, breach of fiduciary duty

17  and inducement to breach fiduciary claims against a former employee and his competitor-employer,

18  and is on all fours with the instant motion.

19    **II.  DEFENDANTS' MOTION SHOULD BE OVERRULED IN ITS ENTIRETY**

20  **A.    Albert's Complaint Alleges Cognizable Counts Against Each Defendant**

21    A motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.

22  *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

23    The sole purpose of a motion to dismiss under Rule 12(b)(6) "is to test the legal sufficiency

24  of the complaint."  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Federal

25  Rule of Civil Procedure 8(a) sets forth a light burden at the pleading stage, requiring that a

26  Complaint include "a short and plain statement of the claim showing that the pleader is entitled to

27  relief."  Fed.R.Civ.P. 8(a).  Rule 8(e)(1) provides that each averment of a pleading shall be simple,

28  concise and direct.  The complaint must give the defendant "fair notice of what the . . . claim is and

Carothers DiSante &
Freudenberger LLP

1578967.1

Case No.  4:19-cv-07477-PJH
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS

1  the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

2  (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957).)  A pleading shall "contain either direct or

3  inferential allegations respecting all the material elements necessary to sustain recovery under some

4  viable legal theory." *Id.*, 562.  "Legal conclusions can provide the framework of a complaint".

5  *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

6      "The court must accept as true all allegations of material fact and construe them in the light

7  most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484

8  (9th Cir. 1995); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  To evaluate the sufficiency

9  of a pleading, the court first identifies the non-conclusory factual allegations, and then determines

10  whether these allegations, taken as true and construed in the light most favorable to plaintiff,

11  "plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.

12      Importantly, a party may allege inconsistent factual allegations.  *Henry v. Daytop Village,*

13  *Inc.*, 42 F.3d 89, 95 (2d Cir. 1994).  And, Rule 8 permits a party to plead alternative theories of

14  liability, even if those theories are inconsistent.  F.R.C.P. 8(e)(2); *Cellars v. Pacific Coast*

15  *Packaging, Inc.*, 189 F.R.D. 575, 578-579 (1999).

16      "Dismissal of a complaint for failure to state a claim is not proper when a plaintiff has

17  alleged 'enough facts to state a claim to relief that is plausible on its face.'"  *ChromaDex,* 369

18  F.Supp.3d at 987 (quoting *Twombly*, 550 U.S. at 570.)  "Plausibility," does not refer to the

19  likelihood of success proving the allegations.  It refers to whether the factual allegations, when

20  assumed to be true, "allow [] the court to draw the reasonable inference that the defendant is liable

21  for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

22      Also, the test is not whether it appears on the face of the pleadings that a recovery is very

23  remote and unlikely (*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)), and Rule 12(b)(6) does not

24  "countenance dismissals" based on the court's disbelief of the factual allegations.  *Neitzke v.*

25  *Williams*, 490 U.S. 319, 327 (1989).

26      Thus, a claim has "facial plausibility" if the plaintiff pleads facts, as Albert's has done here,

27  that "allow [] the court to draw the reasonable inference that the defendant is liable for the

28  misconduct alleged."  *Iqbal,* 556 U.S. 662, 678.

CAROTHERS DISANTE &
FREUDENBERGER LLP

Case No.  4:19-cv-07477-PJH
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS

1578967.1

1    Finally, a complaint should not be dismissed for failure to state a claim unless it appears

2    *beyond doubt* that the plaintiff can prove no set of facts in support of its claim that would entitle it

3    to relief.  *Parks Sch. of Bus..*, 51 F.3d  at 1484.  If the court dismisses the complaint, "it should

4    grant leave to amend even if no request to amend the pleading was made, unless it determines that

5    the pleading **could not possibly be cured** by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d

6    1122, 1127 (9th Cir. 2000) (emphasis added).

7    **B.**    **Albert's Trade Secret Claims Meet The *Iqbal/Twombly* Pleading Standard**

8    "[U]nder the DTSA and the CUTSA, a plaintiff must allege (1) that it is the owner of a

9    trade secret; (2) that the defendant misappropriated the trade secret; and (3) that it was damaged by

10   the defendants' actions."  *Alta Devices, Inc. v. LG Electronics, Inc.,* 343 F.Supp.3d 868, 877 (N.D.

11   Cal. 2018).  While the complaint need not outline all the details of the trade secret, it must

12   "describe the subject matter of the trade secret with sufficient particularity to separate it from

13   matters of general knowledge in the trade or of special persons who are skilled in the trade, and to

14   permit the defendant to ascertain at least the boundaries within which the secret lies.  *Vendavo, Inc.*

15   *v. Price f(x) AG* , No. 17-cv-06930-RS, 2018 WL 1456697, *4 (N.D. Cal. Mar. 23, 2018) (citations

16   omitted).  Many courts also require allegations showing that the owner has made reasonable efforts

17   to keep the secret, and the secret derives independent economic value by not being generally

18   known to other persons."  *Beckton, Dickinson & Co. v. Cytek Biosciences, Inc.,* 18-cv-00933-

19   MMC, 2018 WL 2298500, *2 (N.D. Cal. May 21, 2018).[1]

20    The Motion to Dismiss attacks the trade secret allegations on two grounds: (i) that Albert's

21   did not sufficiently specify the trade secrets that it alleges were misappropriated (Motion, 5) and

22   (ii) did not allege the specific act or acts of misappropriation (Motion, 6).  The Complaint satisfies

23   each of these requisite elements.

24

25   _____

26   [1] These allegations are not at-issue.  Albert's alleged that, at great expense, it developed,
     maintained and safeguarded its trade secret information.  *Id.*, ¶¶ 27, 46, & 55.  And, its Trade
27   Secrets are not known or readily available to Albert's competitors, and Albert's competitors could
     derive economic value if Albert's Trade Secrets were disclosed.  *Id.*  Also, not at issue herein, is
28   that the matter affects interstate commerce.

CAROTHERS DISANTE &
FREUDENBERGER LLP

1578967.1

5

Case No.  4:19-cv-07477-PJH
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS

### 1.   <u>Albert's Sufficiently Identified Its Trade Secrets</u>

Courts recognize that customer-related information (*e.g.* preferences, pricing) rises to the level of a trade secret even though the customer may also know the information and have the ability to disclose it to competitors.  Courts reason that if one party, here Albert's, has expended time and resources compiling information that is not *readily and easily accessible* to competitors and would be economically valuable to a competitor if they had the information, and did not have to expend resources to obtain it, the information can be a trade secret even though a competitor could ultimately gather the information through some level of effort - whether directly from the customers and/or through public research.  *See Courtesy Temporary Service, Inc. v. Camacho*, 222 Cal.App.3d 1278, 1286-87 (1990) (customer information, including billing rates, key contacts, specific requirements and mark up rates, was trade secret information as it was the product of substantial time and effort, had commercial value and was not readily ascertainable to a competitor; moreover, the evidence supported a finding that the defendants used their former employer's information rather than obtaining the customer information through their own labor)[2]; *Morlife v. Perry*, 56 Cal.App.4th 1514, 1521-22 (1997) (customer information that employees learned on the job and maintained in their head compiled through substantial time and effort is valuable to a competitor is trade secret); *Readylink Healthcare v. Cotton*, 126 Cal.App.4th 1006, 1019-20 (2005) (same); *Lillge v. Verity*, 2008 U.S. Dist. LEXIS 26164, *15 (N.D. Cal. 2008) (customer preference information may constitute a trade secret where the information is not generally available and ready knowledge thereof would aid a competitor in soliciting the business); *Richmond Technologies, Inc., Aumtech*, 2011 U.S. Dist. LEXIS 71269, *63-64 (N.D. Cal. 2011) (same); *Brocade Communications Sys. v. A10 Networks,* 873 F.Supp.2d 1192, 1212-15 (N.D. Cal. 2012) (customer-related information, including historical purchasing information and business needs/preferences "is routinely given trade secret protection" even where such information may be ascertainable through

---

[2] When considering DTSA claims, whether separately or with a state law claim, courts are guided by state's trade secrets law to inform their analyses.  *Wang v. Golf Tailor, LLC*, No. 17-cv-00898-LB, 2017 WL 2861111, *4-5 (N.D. Cal. July 5, 2017) (when analyzing a motion to dismiss a DTSA claim under Rule 12(b)(6), the court determined that the contours of  the DTSA claim were "set by California law.")

public sources or the customers themselves because the ready compilation of the data has economic value to a competitor).

"[W]here the employer has expended time and effort identifying customers with particular needs or characteristics, courts will prohibit former employees from **using** this information to capture a share of the market. Such lists are to be distinguished from mere identities and locations of customers where anyone could easily identify the entities as potential customers." *Morlife, Inc.*, 56 Cal.App.4th at 1521-22 (emphasis added, internal citations omitted).  A trade secret need not be a document but may be a formula, procedure or other information that is learned during the course of employment.  *See*, *e.g.*, *Morlife, Inc.*, 56 Cal.App.4th at 1518, 1521-22 (defendant former employees learned of and had in their heads trade secret identities of customers and customer preferences); *Pyro Spectaculars North, Inc. v. Souza,* 861 F.Supp.2d 1079, 1088 (E.D. Cal. 2012) (Although individual pieces of information could ultimately be ascertained by requesting and scouring public records, calling customers and operators, and reverse engineering, plaintiff's compilation of specific customer, operator and vendor information, allowing the competitor to solicit both more selectively and more effectively without having to expend the effort to compile the data, is the type of compilation that may be entitled to trade secret protection); *Alta Devices, Inc. v. LG Electronics, Inc.*, 343 F.Supp.3d at 880-881 (A plaintiff need not spell out the details of the trade secret, but must describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.)

The Complaint sets forth specific factual allegations of Albert's trade secrets:

"In 2012, Albert's purchased substantially all of the assets of PACO pursuant to an asset purchase agreement."

Dkt. No. 1, ¶ 4.

"As part of this acquisition, ***Albert's purchased confidential and proprietary business and trade secret information, including, but not limited to all rights, title and interest in rights under contracts and leases, inventory, accounts receivable, books and records, intellectual property, computer hardware and software, supplies, sales literature, customer, supplier and distributor lists, supplier***

> ***relationships, client relationships, methodologies, confidential employee
> information, pricing information, "key man" commitment and know how, import
> volume information, sales volume information, and goodwill of PACO.***"

*Id.,* ¶ 6 (emphasis added).

The Complaint uses a defined term "Albert's Trade Secrets" which is defined as:

> "the ***customer information, supplier information, pricing, financing, sales volume,
> potential customer and venture partners, import volumes, personnel files and
> records, customer lists, proposed or contemplated investments, financial records,
> other internally generated studies and reports…***"

*Id.*, ¶ 27 (emphasis added).

> "Akagaki, Holzman and Laffer were trained about the importance of maintaining the
> confidentiality of ***Albert's specific customer contact information, including points
> of contact, cell phone information, email contact information and pertinent
> relationship information and make every effort to protect the confidentiality of
> pricing, volume, source and sales information***."

*Id*., ¶ 29 (emphasis added).

The Violation of Defend Trade Secrets Act claim (Count 1) incorporates these allegations
by reference, *id.,* ¶ 45, and sets forth that "Albert's acquired the trade secrets, ***including but not
limited to business relationships, pricing information and sales production***"  *Id.,* ¶ 46:14-16
(emphasis added).  The Violation of the California Uniform Trade Secrets Act claim (Count 2),
also incorporates paragraphs 4, 6, 27 and 44 (i*d.*, ¶ 54) particularizing the confidential and
proprietary trade secret information that is the subject of this claim. *Id., ¶* 55.

As such, Albert's put the defendants on adequate notice as to its trade secrets, compilations
of the customer information, supplier information, pricing, financing, sales volume, potential
customer and venture partners, import volumes, personnel files and records, customer lists,
proposed or contemplated investments, financial records, other internally generated studies and
reports that would allow a competitor to solicit both more selectively and more effectively without
having to expend funds or effort to compile the data, that are at issue, herein.

### 2.  Defendants Are On Notice of Improper Acts of Misappropriation

Defendants' ignore the Complaint's express allegations of misappropriation, and the
specific trade secret information that was misappropriated:

Carothers DiSante &
Freudenberger LLP

1578967.1

Case No.  4:19-cv-07477-PJH
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS

"Holzman, Akagaki and Laffer failed to return Albert's confidential, proprietary and trade secret information."

*Id.*, ¶ 30;

"Holzman sent correspondence to prospective business partners laying out a proposed plan to recreate PACO by poaching Albert's customers, suppliers and key employees . . . ***using Albert's Trade Secrets and Albert's confidential and other information to compete against Albert's***."

*Id.*, ¶ 32 (emphasis added);

"Holzman's correspondence included **the names of Albert's customers and suppliers, the names of key employees to be poached and the total percentage of annual corporate sales made by those key employees, pricing and financing resources, potential venture partners, key confidential relationships, including Albert's plans to expand and develop certain markets, Albert's investment commitments, profitability, Albert's business model, product sources, import volumes,** among other confidential and proprietary information."

*Id.*, ¶ 33;

"Holzman and Akagaki then directly recruited other of Albert's key employees to provide Albert's Trade Secrets such as confidential financial information, including financial analyses and information to Holzman to develop a business model for the planned competing business venture. . . ."

*Id.*, ¶ 34;

"Holzman built a business plan or business model for the competing business that became TFO using Albert's Trade Secrets such as confidential financial information, including cash flow, profitability, sales information and costs, including confidential employee compensation information of Albert's employees with the most desirable skillsets."

*Id.*, ¶ 35;

Holzman used the trade secret information that he first developed at PACO and sold to Albert's to compete "with Albert's through solicitation of business partners and investors ***that he learned of as a result of his employment with Albert's, and some of which were included among the assets sold under the asset purchase agreement***. . . ."

without Albert's permission.  *Id.*, ¶ 36 (emphasis added);

Like in *Bancroft-Whitney*, "Holzman hired or promised to hire and/or provide equity to certain of Albert's employees that he knew, ***based on Albert's confidential and trade secret information, were key to PACO's operations and profitability***. . . ."

*Id.* (emphasis added);

CAROTHERS DISANTE & FREUDENBERGER LLP

1578967.1

"Defendants utilized Albert's confidential, proprietary and trade secret information to solicit business relationships for the benefit of TFO."

*Id.*, ¶ 44.

"Defendants ***have, at the very least, retained unauthorized copies of Albert's Trade Secrets***, which are confidential and proprietary trade secret information."

*Id.*, ¶¶ 48 & 57 (emphasis added).

As such, Albert's alleged specific incidents in which Defendants misappropriated Albert's trade secrets in compliance with *Iqbal/Twombly*.

**C.   Albert's Non-Trade Secret Counts Are Adequately Pled and Are Not Subject to CUTSA Supersession, Thus, Defendants' Motion to Dismiss Should Be Denied**

**1.   Defendants' CUTSA "Preemption" Argument Fails**

**a.   CUTSA Statutory Exemption for Breach of Contract and Statutory Claims-Count 3**

In relevant part, CUTSA states "(a)  Except as otherwise expressly provided, this title ***does not supersede*** any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets. (b) ***This title does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret….***"  Cal. Civ. Code § 3426.7 (emphases added).

Count 3 is for breach of contract which may be expressly based on a misappropriation of a trade that breaches a contract. *See ChromaDex,* 369 F.Supp.3d at 988; *Loop AI Labs Inc. v. Gatti,* No. 15-CV-00798-HSG, 2015 WL 5158461, *3 (N.D. Cal. Sept. 2, 2015).

**b.   Non-Trade Secret Tort Claims Arise Out Of Allegations of Independent Facts and Are Not Subject to Dismissal on 12(b)(6).**

The recent *ChromaDex* decision held that the lead California case, *Angelica Textile Services, Inc. v. Park*, 220 Cal.App.4th 495 (2013), allows claims related to misappropriation of trade secrets, such as breach of fiduciary duty against the former employee and inducement to breach that duty against the competitor-employer.  *ChromaDex,* 369 F.Supp.3d at 989. The question of whether claims are displaced by CUTSA is a fact-based inquiry better suited for

1  summary judgment or trial, not a motion to dismiss.  *Bryant v. Mattel, Inc.*, No. CV 04-9049

2  (RNBx), 2010 WL 3705668 at *22, 2010 U.S. Dist. LEXIS 103851 at *74 (C.D. Cal. Aug. 2,

3  2010).  Indeed the notion of dismissal based on supersession or preemption is premature.  *Amron*

4  *Intern. Diving Supply, Inc. Hydrolinx Diving Commc'n, Inc.*, No. 11-CV-1890, 2011 WL 5025178

5  at *10, 2011 U.S. Dist. LEXIS 122420 at *27 (S.D. Cal Oct. 21, 2011 ("At this point in the case,

6  the status of the information is merely a matter of allegation and until the distinction is made

7  between (plaintiff's) allegedly misappropriated trade secret information and its confidential or non-

8  confidential proprietary non-trade secret information, the question of preemption should not be

9  addressed.")

10      Defendants concede that at the pleading stage, the preemption analysis asks "whether

11  stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be

12  reassembled to independently support other causes of action."  *Waymo LLC v. Uber Technologies,*

13  *Inc.*, 256 F. Supp.3d 1059, 1062 (N.D. Cal. June 8, 2017).  A tort claim is not displaced "if it is

14  based upon alleged facts beyond trade secret misappropriation."  *Titan Global LLC v. Organo Gold*

15  *Intern., Inc.*, No.: 12-CV-2104-LHK, 2012 WL 6019285 (N.D. Cal. 2012).[3]

16      Defendants' preemption argument relies entirely on cases that either pre-date or fail to

17  analyze California's lead case on this issue, *Angelica Textile Services Inc.*, 220 Cal.App.4th 495,

18  the applicable California law. *See e.g. Qiang Wang v. Palo Alto Networks, Inc.*, 2013 WL 415615

19  (N.D. Cal. 2013) (Plaintiff's non-trade secret claims relied on and incorporated by reference all of

20  the trade secret misappropriation factual allegations); *Waymo LLC v. Uber Techs.*, Inc., 1059 (N.D.

21  Cal. 2017).

22      While Defendants argue that the non-trade secret claims replicate trade secret

23  misappropriation, Dkt. No. 26,14:6-15:9, examination of the actual allegations demonstrates the

24  superficial nature of this assertion.  Here, Albert's non-trade secret tort claims in Count 4-7 and 9

25  do not incorporate by reference the trade secret misappropriation allegations but allege independent

26

27  _____

    [3] Indeed, as determined by the Fourth District Court of Appeal in *Angelica v. Park,* when there are

28  factual disputes as to the facts underlying the non-trade secret torts, summary judgment is not
    appropriate.  *Angelica Textile Services, Inc.,* 220 Cal.App.4th at 503.

1578967.1

facts supporting each claim.  Dkt. No. 1, ¶¶ 64-72, 73-82, 83-87, 88-96, 97-104, 109-115.  Count 8, under B&P § 17200, alleges the trade secret theft as a predicate wrongful act to support an unfair competition claim and other wrongful conduct.  Moreover, as described in more detail below, each of Counts 4, 5, 6, 7, 8 and 9 allege facts about the duties the defendants violated and other of Defendants' actions to Albert's detriment, facts that are apart from the related wrong of misappropriating trade secrets.

**D.**   **Albert's Non-Trade Secret Claims Are Adequately Pled and Put Defendants on Notice of the Counts**

   **1.**   **Count 3 - Breach of Contract Against Holzman, Akagaki and Laffer**

Defendants challenge the sufficiency of Albert's "legal effect" allegations in support of the Breach of Contract claim.  To sufficiently plead "legal effect", Albert's must allege the substance of the contract's relevant terms.  *North County Communications Corp. v. Verizon Global Networks, Inc.*, 685 F. Supp.2d 1112, 1123 (2010) (citing *McKell v. Washington Mut., Inc.*, 142 Cal.App.4th 1457, 1489).  The relevant terms include the nature of the contract, dates pertinent to the contract, and other relevant terms that would put Defendants on notice of the basis of Count Three.  *See id.* As articulated in the Northern District:

> A plaintiff need not plead the contract terms with unusual specificity.  '[I]t is unnecessary for a plaintiff to allege the terms of the alleged contract with precision,' but 'the Court must be able generally to discern at least what material obligation of the contract the defendant allegedly breached.'  *Langan v. United Servs. Auto Ass'n*, 69 F.Supp.3d 965, 979 (N.D. Cal. 2014); see *Sierra View Local Health Care Dist. v. Influence Health, Inc.*, No. 1:15-cv-00689-DAD-SABm 2016 WL 2346799, *5 (E.D. Cal. May 4, 2016) (holding that fairly rudimentary contract allegations satisfied Rule 8).

*Qingdao Tang Buy International Import & Export Company, Limited v. Preferred Secured Agents, Inc.,* 15-cv-00624-LB, 2016 WL 6524396, *3 (N.D. Cal. Nov. 3, 2016).

Specifically, as a condition of the acquisition, Holzman and Akagaki executed an employment agreement with Albert's, and agreed to the terms of Albert's and United Natural Food, Inc.'s[4] Associate Handbook, Code of Business Ethics, and Code of Conduct.  *Id.*, ¶¶ 19-20.

---

[4]  Albert's is a wholly owned subsidiary of UNFI.  *Id.* at 3, n. 1.

CAROTHERS DISANTE &
FREUDENBERGER LLP

1578967.1

1  Defendant Laffer also agreed to the terms of UNFI's Code of Business Ethics and Associate

2  Handbook.  *Id.,* ¶ 22.

3       The Employment Agreements required Holzman, Akagaki and Laffer to safeguard Albert's

4  confidential information, ***including information concerning Albert's customer information,***

5  ***supplier information, pricing, financing, sales volume, potential customer and venture partners,***

6  ***import volumes, personnel files and records, customer lists, proposed or contemplated***

7  ***investments, financial records, other internally generated studies and reports, or other***

8  ***information relating to the business of the companies or that is owned, obtained, possessed or***

9  ***developed by Albert's or through their employment with Albert's.***  *Id.,* ¶ 23.b (emphasis added).

10       Holzman, Akagaki and Laffer agreed and understood that Albert's provided them with trade

11  secrets and confidential information in order to carry out their employment duties for Albert's.  *Id.,*

12  ¶ 24.

13       Holzman and Akagaki breached the Employment Agreements by stealing Albert's

14  confidential and proprietary trade secret information, disclosing Albert's confidential, proprietary

15  and trade secret information to third parties, and failing to return Albert's confidential, proprietary

16  and trade secret information.  *Id.,* ¶  67.

17       The Employment Agreements also required Akagaki and Laffer to disclose and seek

18  permission from Albert's before pursuit of competing economic opportunities while employed by

19  Albert's, but both failed to do so.  *Id.,* ¶ 69.

20       The contract terms required these Defendants to keep Albert's confidential information

21  confidential, prohibited Defendants from engaging in activities that directly compete against

22  Albert's without disclosing those activities and obtaining authority to engage in such activities and

23  Defendants are in breach.  Thus, the Complaint provides Defendants with the notice intended under

24  Rules 8 and 12(b)(6).

25       **2.**  **Tortious Inducement to Breach Contract (Count 4) and Tortious Interference**

26       **with Business Relations/Conduct (Count 5)**

27       Defendants correctly observe that Count 4 pertains to Defendants' tortious actions targeting

28  Albert's employees and Count 5 relates to Defendants' tortious actions targeting Albert's

Carothers DiSante &
Freudenberger LLP

1578967.1

1   relationships with third parties.  Defendants do not dispute that Albert's sufficiently alleged the

2   basic elements of each tort: (1) defendant knew of contract or relationship, (2) undertook non-

3   privileged actions to interfere with the contracts at issue in violation of Albert's rights and, (3)

4   caused resulting damages.  Dkt. No. 1, ¶¶ 74-82, 84-87

5          Defendants rely upon *Pellerin v. Honeywell Intern., Inc.*, 877 F.Supp.2d 983 (S.D. Cal.

6   2012), for the proposition that such claims are insufficient when alleged on information and belief,

7   as "vague and conclusory".

8          However, Defendants do not adequately address well-settled law that pleading "upon

9   information and belief" is sufficient to satisfy federal notice pleading under Rule 8(a), especially

10  where, as here, defendants possess the underlying information.

11         Even after *Iqbal* and *Twombly*, numerous courts have held that facts may be pleaded
       on information and belief -- especially where, as here, the underlying evidence is
12     peculiarly within the [defendants'] possession.  *See, e.g., Arista Records, LLC v.
       Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) ('The *Twombly* plausibility standard, which
13     applies to all civil actions, does not prevent a plaintiff from pleading facts alleged
       upon information and belief where the facts are peculiarly within the possession and
14     control of the defendant.')[]; *Boykin v. KeyCorp.*, 521 F.3d 202, 215 (2d Cir. 2008);
       *see also Waldo v. Eli Lilly & Co.*, No. CIV S-13-0789 LKK, 2013 WL 5554623, at
15     *5 (E.D. Cal. Oct. 8, 2013) ('[D]istrict courts may properly consider allegations pled
       on information and belief in determining whether claims have been adequately pled
16     under Rule 8.'); *Marolda v. Symantec Corp.*, 672 F.Supp.2d 992, 999 (N.D. Cal.
       2009) ('Under the Rule 8(a) pleading standard, plaintiff may base her claims on
17     information and belief'); *Dixie v. Virga*, No. 2:12-CV-2626-MCE-DAD, 2015 WL
       412298, at *6 (E.D. Cal. Jan. 30, 2015); 5 Charles Alan Wright et al., *Federal*
18     *Practice and Procedure § 1224* (3d 3d. 1998).
19
20  *GCIU Employer Retirement Fund v. Quad/Graphics, Inc.*, 2:16-cv-00100-ODW (AFMx), 2016

21  WL3027336, *3 (C.D. Cal. 2016).

22         Second, *Pellerin* does not discuss and has no bearing on the propriety of alleging Count 4 or

23  5 on information and belief.  Unlike the plaintiff in *Pellerin*, the Complaint here states facts

24  identifying the contracts with which Defendants interfered: employment contracts of other Albert's

25  employees who were duty bound to disclose their participation in activities *during their*

26  *employment* that directly competed against Albert's.  Dkt. No. 1, ¶ 74.  The Complaint also sets

27  forth ultimate facts reflecting Defendants' wrongful intent - Holzman first recruited Akagaki and

28  Laffer, and Akagaki and Laffer recruited other Albert's employees to take Albert's confidential and

CAROTHERS DiSANTE &
FREUDENBERGER LLP

1578967.1

14

Case No.  4:19-cv-07477-PJH
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS

1  proprietary trade secret information and give it to Holzman and Akagaki for them to use in starting

2  TFO.  *Id.,* 75-82.

3          **a.**       **Count 4 - Tortious Inducement to Breach Contract**

4        Holzman induced Akagaki to breach his contractual obligations of confidentiality to

5  Albert's in order to develop and secure funding for and creating a competing business.  *Id.,* ¶ 77.

6  Holzman also induced Akagaki to breach his contractual obligation to disclose and seek permission

7  from Albert's before pursuing competing economic opportunities while still employed by Albert's.

8  *Id.,* ¶ 78.  Together, Holzman, Akagaki and TFO induced Laffer and other Albert's employees to

9  similarly breach their contractual obligations to Albert's to disclose information and seek

10  permission to pursue competing economic opportunities while still employed by Albert's.  *Id.,* 79.

11  These action constituted a direct violation of the Employment Agreements, agreements that the

12  Defendants knew about and are independent acts from the misappropriation of trade secret claims.

13          **b.**       **Count 5 - Tortious Interference with Business Relations/Contract**

14        Count 5 incorporates numerous facts by reference that go unmentioned in Defendants'

15  Motion but provide the pertinent factual backdrop against which Defendants' misconduct

16  transpired.  Dkt. No. 1, ¶¶ 23, b. and e; 28-29.  Paragraph 85 of the Complaint expressly alleged

17  that Defendants interfered with Plaintiff's customers, suppliers and current venture partners using

18  wrongful means, by usurping business relationships and opportunities for their own personal gain

19  during and after their employment with Albert's.  There can be no confusion from a plain reading

20  of the Complaint that, by this claim, Albert's seeks to recover for Defendants' interference in its

21  business agreements with customers, suppliers and vendors with whom Albert's did business

22  during Defendants' employment, relationships that ended due to Defendants' wrongful conduct.

23  Counts 4 and 5 include allegations that are more than labels and conclusions, or a mere formulaic

24  recitation of the elements of a cause of action in line with *Iqbal*, 556 U.S. at 678.  The allegations

25  in support of Counts 4 and 5 satisfy Rule 8's requirement and survive Defendants' Motion.

26

27

28

Carothers DiSante &
Freudenberger LLP

1578967.1

15

Case No.  4:19-cv-07477-PJH
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS

**3.** **Counts 6 and 7: Breach of Duty of Loyalty and Inducement to Breach Duty of Loyalty Is Well Pled**

    **a.** **Individual Defendants' Actions Breached Their Duty--Albert's Does Not Base Claims on Plans to Compete.**

The Duty of Loyalty arises from statute.  Labor Code §§ 2860 and 2863.  And, as the California Supreme Court made clear, an employee can breach his or her duty of loyalty to their employer by taking and using confidential information and poaching key employees. *Bancroft-Whitney Co.*, 64 Cal.2d at 346 (1966).  Albert's does not dispute that "[t]he mere fact that the officer makes preparations to compete before he resigns his office is not sufficient to constitute a breach of duty."  Of greater import is *Bancroft-Whitney's* holding:

> It is the nature of the officer's preparations which is significant. ("Comment e of section 393 of the Restatement Second of Agency provides that an agent can make arrangements to compete with his principal even before the termination of the agency, but that he cannot properly use confidential information peculiar to his employer's business and acquired therein.  'Thus, before the end of his employment, he can properly purchase a rival business and upon termination of employment immediately compete.  He is not, however, entitled to solicit customers for such rival business before the end of his employment nor can he properly do other similar acts in direct competition with the employer's business. . . . ***An employee is subject to liability if, before or after leaving the employment, he causes fellow employees to break their contracts with the employer***.'

*Id.*, n. 10 (emphasis added, citations omitted).  *Bancroft-Whitney* held that the defendant breached his fiduciary duties to plaintiff as a matter of law because the undisputed evidence showed a consistent course of conduct designed to poach *Bancroft-Whitney's* best and most affordable employees.  *Id.*, 347; *ChromaDex Inc.,* 369 F.Supp.3d 983 (motion to dismiss similar breach of fiduciary duty denied); *see also, Fowler v. Varian Associates, Inc.*, 196 Cal.App.3d 34 (1987).

The Complaint specifically alleges that Laffer held himself out as working for start-up competitor TFO, *while employed by and working for Albert's*.  Dkt. No. 1, ¶ 92.  Defendants' focus on their unfounded conclusion that Laffer was preparing to leave his employment does not accurately reflect the Complaint.  Dkt. No. 1, ¶ 90 (during their employment, Laffer and Akagaki had the duty to give Albert's preference before transacting any business similar to that of Albert's for their own account and did not, electing to breach their duties to Albert's.)  Yet, while employed

by Albert's, Akagaki began working with Holzman to identify partners or investors for the entity that became TFO and did not disclose his actions to compete to Albert's. *Id.*, ¶ 91. Similarly, Laffer held himself out and commenced working for TFO, a direct competitor of Albert's, without disclosing his new employment with TFO. *Id.*, ¶ 92. Akagaki and Laffer did not simply take actions to plan to compete, but both used Albert's business information for their own account in violation of their duty to their employer. *Id.*, ¶¶ 91-92. Indeed, Defendants' suggestion that the former employees' actions were plans to compete supports denying the motion until the factual dispute as to whether they breached duties owed to Albert's or were acting to make plans to compete is explored in discovery.

Akagaki and Laffer breached their duty of loyalty by using Albert's property as if it was their own and starting up TFO ***on Albert's dime, while still employed by Albert's,*** (Dkt. No. 1, ¶¶ 91-92), is the plain and concise allegation of fact required by Rule 8.

### b.   Economic Loss Rule Does Not Apply

Defendants raise the novel argument that the "economic loss rule" bars tort claims based upon contract breaches. However, Defendants' own authority is inapposite. *See UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*, 117 F.Supp.3d 1092, 1103 (C.D. Cal. 2017) ("[t]he rule generally bars tort claims based on contract breaches, thereby limiting contracting parties to contract damages.")  In *UMG*, fraud, negligent misrepresentation, promissory fraud and fraudulent concealment claims were based entirely on the allegation that defendants had no intention of honoring their oral promise to permit the plaintiff to reproduce copyrighted sound recordings, and claimants failed to identify any independent duty that was violated. *Id.*, 1104. In contrast, here, Defendants activities related to launching TFO violated the statutory duties of loyalty, distinct from contractual obligations flowing from the Employment Agreements - and Albert's expressly alleged as much.

### c.   Count 6: Breach of Duty of Loyalty

Moreover, Count 6 is not a common law tort claim but arises from the Labor Code as Akagaki and Laffer breached an independent duty of loyalty arising out of Labor Code sections 2860 and 2863. Dkt. No. 1, ¶¶ 89-90. Plaintiff's Motion concedes that the Labor Code provides

1  that property acquired during employment remains the property of the employer, and the policy

2  that an employer's interests are to take precedence over personal interests.  Dkt. No. 26, p. 11:15-

3  19.  And, the conduct described in the Complaint goes precisely to the conduct prohibited by these

4  Labor Code sections.

5          Furthermore, Albert's is entitled to allege alternate theories of liability without running

6  afoul of Rule 8.  F.R.C.P. 8(e)(2); *Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575. 578-

7  579 (1999).  Thus, it is common that some of the same facts foundational elements of different

8  theories of liability.  At the pleading stage, a plaintiff is entitled to preserve its rights and allege

9  claims as to all theories available under the facts, and a failure to do so risks waiving ones rights.

10          The paragraphs incorporated by reference describe the employment contracts into which

11  Akagaki and Laffer entered with Albert's, and the particular terms of the contract.  Dkt. No. 1,

12  ¶¶ 23, 26.  And, while the terms of the contract give rise to breach of contract claims against these

13  Defendants, so too does the Labor Code provide a basis of recovery, and the recovery of tort

14  damages, for their conduct.

15          **d.     Count 7: Tortious Inducement of Breach of Loyalty**

16          Breach of Duty of Loyalty is a statutory duty of care encoded in California's Labor Code.

17  Courts recognize that an accompanying tort exists where a third party, one without a duty of care,

18  induces the employee with the duty of care to breach that duty, including the recent *ChromaDex*

19  decision denying a similar motion to dismiss sought by the new competitor-employer.

20  *ChromaDex, Inc. v. Elysium Health*, 369 F.Supp.3d 983; *see also, Intermedics, Inc. v. Ventritex,*

21  *Inc.*, 822 F.Supp. 634, 646 (N.D. Cal. 1993) (discussing the statute of limitations for the tort of

22  inducing breach of contract, and the separate tort of inducing breach of fiduciary duty); *Nasrawi v.*

23  *Buck Consultants LLC*, 231 Cal.App.4th 328, 343 (2014) (holding that to aid and abet a breach of

24  fiduciary duty, the plaintiff must plead that the defendant had actual knowledge of the duty and

25  provided substantial assistance or encouragement to the other person to breach it.)

26          Defendants ignore this express authority allowing a claim for inducing a breach of a duty.

27  The Complaint alleges that Holzman and TFO knew about Agakaki's and Laffer's duties to

28  Albert's and encouraged them to flagrantly violate that duty to Albert's detriment by recruiting

CAROTHERS DISANTE &
FREUDENBERGER LLP

1578967.1

18

Case No.  4:19-cv-07477-PJH
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS

1   them to steal Albert's property, provide it to Holzman in order to help launch TFO and to compete

2   against Albert's without giving Albert's notice.  Dkt. No. 1, ¶ 99.  Albert's adequately alleged this

3   count.

4          **4.**    **Count 8: Unfair Competition**

5         Defendants' argument disputing the sufficiency of this claim is not-well taken.  Recent

6   California caselaw makes it abundantly clear that Albert's has standing.  *Ivanoff v. Bank of*

7   *America*, 9 Cal.App.5th 719, 731 (2017).  Under the UCL, since the passage of Proposition 64,

8        a plaintiff "must now (1) **establish a loss or deprivation of money or property**
     **sufficient to qualify as injury in fact, i.e.,** ***economic injury*****, and (2) show that**

9        **that economic injury was the result of, i.e.** ***caused by*****, the unfair business**
     **practice or false advertising that is the gravamen of the claim.**" (*Kwikset, supra,*

10       51 Cal.4th at p. 322, 120 Cal.Rptr.3d 741, 246 P.3d 877.) "[I]njury in fact" as used
     in Proposition 64 has the same meaning as under federal law: " " [A]n invasion of a

11       legally protected interest which is (a) concrete ***453*** and particularized, [citations];
     and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " [citation].' "

12       (*Kwikset*, at p. 322, 120 Cal.Rptr.3d 741, 246 P.3d 877.) Proposition 64, however,
     imposes the additional requirement that the plaintiff have lost money or property.

13       (*Ibid.*) Indeed, loss of money or property—that is, "economic injury"—"is itself a
     [classic] form of injury in fact." (*Id.,* p. 323, 120 Cal.Rptr.3d 741, 246 P.3d 877;

14       see *id.,* p. 325, fn. 8, 120 Cal.Rptr.3d 741, 246 P.3d 877 ["proof of lost money or
     property will generally satisfy the element of injury in fact"].) Economic injury may

15       be shown in many ways including a plaintiff "surrender[ing] in a transaction more,
     or acquir[ing] in a transaction less, than he or she otherwise would have"; "hav[ing]

16       a present or future property interest diminished"; and "be[ing] required to enter into
     a transaction, costing money or property, that would otherwise have been

17       unnecessary." (*Id.,* p. 323, 120 Cal.Rptr.3d 741, 246 P.3d 877.)

18

19  *Id*.

20        More generally, under California Business and Professions Code § 17200, conduct deemed

21  unlawful, unfair, or fraudulent under other statutes is an element of an unfair competition claim.

22  *Cel-Tech, Inc. v. Los Angeles Cellular Co.*, 20 Cal.4th 163, 180 (1999).  That a defendant

23  committed wrongful action, not the facts of trade secret misappropriation, is the element of the

24  17200 claim.  California concluded that a similar 17200 claim should have gone to trial, even

25  though wrongdoing under CUTSA was alleged, and should not have been adjudicated against the

26  former employer at summary judgment.  *Angelica Textiles Services, Inc.*, 220 Cal.App.4th at 510.

27  Like Albert's alleges, "The tortious conduct needed to support a claim for interference with

28

CAROTHERS DiSANTE &
FREUDENBERGER LLP

1578967.1

19

Case No.  4:19-cv-07477-PJH
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS

1    business relations may include wrongful employee and customer recruitment." *Id*. And, the

2    conduct needed to maintain a statutory (17200) unfair competition cause of action may consist of

3    tortious interference with business relations. *Id*. Evidence, at the summary judgment stage, that

4    the defendant had wrongfully recruited plaintiff's customers while he was plaintiff's employee,

5    was sufficient to proceed to trial on the 17200 claim. *Id*.

6         Albert's fact allegations underlying this statutory claim meet *Angelica Textile's* test, and are

7    more than adequate to alert Defendants to the many transgressions carried out by Defendants in

8    absconding with Albert's trade secrets, including specific client information (relationship details,

9    points of contact, business terms, sales volumes, export volumes, investment plans) that form the

10   independent wrongful acts and the resulting loss of client relationships as a result of Defendants'

11   wrongful taking of Albert's information and property. (Dkt. No. 1, ¶¶ 4, 6, 27, 29, 30, 32-36, 44,

12   48). Albert's inability to calculate a precise loss (a figure that continues to grow) does not

13   eliminate Albert's right to proceed on this claim. Discovery will be useful to uncover the extent of

14   harm caused by Defendants and/or the ill-gotten gains of Defendants.

15        Albert's Count 8 adequately pleads a variety of wrongful conduct by Defendants and should

16   not be dismissed.

17        **5.**   **Count 9: Interference with Prospective Economic Advantage**

18        Defendants do not claim that Albert's has failed to provide adequate notice of the elements

19   of this claim. Instead, they seem to assert that the allegations of fact are "conclusory" in mistaken

20   reliance on *Vascular Imaging Professionals, Inc. v. Digirad Corporation*, 401 F.Supp.3d 1005,

21   1013 (S.D. Cal. 2019). *Vascular Imaging* dismissed a claim because:

22        (i) plaintiff did not allege that the defendant competitor had knowledge of any relationship

23   between plaintiff and its customers. *Id*. ("[A]bsent from the complaint are any allegations related

24   to the second element, namely Defendants knowledge of any relationship between Plaintiff and

25   these customers"; and

26        (ii) the complaint did not identify the wrongful conduct engaged in by the Defendants

27   *separate from the breach of contract itself*. *Id*.

28        "The tortious conduct needed to support a claim for interference with business relations

20

1  may include wrongful employee and customer recruitment." *Angelica Textiles Services, Inc.*, 220

2  Cal.App.4th at 510.  Evidence, at the summary judgment stage, that the defendant had wrongfully

3  recruited plaintiff's customers while he was plaintiff's employee, was sufficient to proceed to trial

4  on Interference with Business Relations (prospective economic advantage).  *Id.*

5          Paragraph 110 of the Complaint undermines defendants' argument as Albert's specifically

6  alleged that it

7              had business relationships with various entities and individuals that are or were
             Albert's customers, suppliers, business venture partners and/or with reasonable
8              certainty, prospective customers and/or business venture partners.  Albert's
             relationships with such individuals and entities promised a continuing probability of
9              future economic benefit to Albert's.

10         Further, "Defendants engaged in negligent or intentional conduct ***designed to disrupt the***

11  ***business relationships between Albert's and its customers, suppliers and business venture***

12  ***partners by diverting existing or probable customers, suppliers and business venture partners to***

13  ***TFO***."  *Id., 112* (emphasis added).  The wrongful conduct may relate to trade secret

14  misappropriation, but has independent facts about business disruption, similar to the facts

15  underlying *Angelica Textiles*.  Thus an adequate nexus of independent facts.  Accordingly, Albert's

16  sufficiently alleges both an independent wrong, beyond the mere fact of the interference, and

17  beyond the breach of contract claim to support Count 9.

18         Paragraphs 110 and 112 of the Complaint specify that Count 9 is based on Defendants

19  usurping Albert's business relationship and opportunities while Akagaki and Laffer were still

20  Albert's employees, independently tortious conduct that is wrongful beyond the fact of the

21  interference itself.  Further, unlike *Vascular Imaging,* Paragraph 111 asserts that Defendants knew

22  of the relationships between Albert's and the customers, suppliers and business venture partners, in

23  which Defendants wrongfully interfered.

24         As already set forth in detail above, and despite Defendants' argument to the contrary -

25  Rule 8 and substantial case law permit pleading on information and belief and the facts set forth

26  based on information and belief here provide Defendants with notice of the facts and conduct for

27  which they are being hailed into court.  Fed.R.Civ.P. 8(a), *GCIU Employer Retirement Fund v.*

28

CAROTHERS DiSANTE &
FREUDENBERGER LLP

1578967.1

Case No.  4:19-cv-07477-PJH
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS

1    *Quad/Graphics, Inc.*, 2:16-cv-00100-ODW (AFMx), 2016 WL3027336.

2    **E.      In the Event This Court Dismisses or Strikes Any Portion of The Complaint, Albert's**

3    **Should Be Granted Leave to Amend**

4         A motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.

5    *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A complaint should not

6    be dismissed for failure to state a claim unless it appears *beyond doubt* that the plaintiff can prove

7    no set of facts in support of its claim that would entitle it to relief.  *Parks Sch. of Bus.*, 51 F.3d at

8    1484 (9th Cir. 1995). Indeed, under the liberal pleading standard, a district court should grant the

9    plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations.

10   *Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 1995).  Should this Court determine Albert's

11   Complaint falls short in carrying is pleading burden, Albert's respectfully requests leave to amend

12   the Complaint.

13        As demonstrated by Defendants' failure to identify a dismissal of the complaint with

14   prejudice on its Statement of Issues to Be Decided, the Motion to Dismiss contains no evidence or

15   sufficient argument that Albert's cannot possibly cure the pleading by allegation of other facts, or

16   will otherwise be unable to amend the Complaint to sufficiently allege its claims.  *Lopez v. Smith*,

17   203 F.3d 1122, 1127 (9th Cir. 2000).

18        Defendants' reliance on *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136  (9th.

19   Cir. 2015) is misplaced.  *Chinatown* denied leave to amend due to  federal preemption,  *id*., 1144-

20   45, and after three years of litigation, including an appeal, it was clear that the complaint could not

21   be successfully amended.  *Id*., n. 9.  *Saul v. U.S.*, 928 F.3d 829, 843 (9th Cir. 1991), too, is

22   inapposite as the Court denied leave to amend the prayer to add a remedy that was not legally

23   cognizable.  *Id.*

24        Should the Court conclude that some aspect of the Complaint is lacking, Albert's requests

25   the opportunity to amend the Complaint and cure any deficiency.

26                              **III.  CONCLUSION**

27        Albert's Complaint provides sufficient notice to Defendants of the misappropriated trade

28   secrets, the acts of misappropriation and satisfies the plausibility standards required for pleading

CAROTHERS DISANTE &
FREUDENBERGER LLP

1578967.1

22

Case No.  4:19-cv-07477-PJH
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS

1  DTSA and CUTSA claims.  Further, the contract claim is pled with sufficient detail about the

2  contracts that Defendants breached to put them on notice of the terms that they violated.  The non-

3  trade secret tort claims are sufficiently pled under the law and there is no prohibition against

4  pleading on information and belief, pleading alternative remedies or even inconsistent allegations.

5  Each common law tort claim is supported by independent facts, even if related to the trade secret

6  claims.  For all of the foregoing reasons, Defendants' Motion should be denied.

7

8  Dated:  January 24, 2020                    CAROTHERS DISANTE & FREUDENBERGER LLP
                                                              Erin Owen
9

10                                                 By:  _____/s/ *Dan M. Forman*_____
11                                                                    Dan M. Forman
                                                        Attorneys for Plaintiff
12                                                      ALBERT'S ORGANICS, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CAROTHERS DISANTE &
FREUDENBERGER LLP

1578967.1

23

Case No.  4:19-cv-07477-PJH
PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS