UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALBERT'S ORGANICS, INC.,

          Plaintiff,

    v.

GREG HOLZMAN, et al.,

          Defendants.

Case No.  19-cv-07477-PJH

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: Dkt. No. 26

      Defendants Greg Holzman, Steve Akagaki, and Jason Laffer, Terrafresh Organics, LLC's ("TFO") motion to dismiss came on for hearing before this court on March 4, 2020. Plaintiff Albert's Organics, Inc. ("Albert's") appeared through its counsel, Dan Forman. Defendants Holzman, Akagaki, and Laffer appeared through their counsel, Stephen Henry, and defendant TFO appeared through its counsel, Crystal Gaudette.  Having read the papers filed by the parties and carefully considered their arguments and relevant authority, and good cause appearing, the court hereby rules as follows for the following reasons.

## BACKGROUND

      On November 13, 2019, plaintiff Albert's filed a complaint ("Compl.") against defendants asserting nine causes of action:  (1) Violation of the Defend Trade Secrets Act against Holzman, Akagaki, and TFO; (2) Violation of the California Uniform Trade Secrets Act against Holzman, Akagaki, and TFO; (3) Breach of Contract against Holzman, Akagaki, and Laffer; (4) Tortious Inducement to Breach Contract against Holzman, Akagaki, and TFO; (5) Tortious Interference with Business Relations/Contract against Holzman, Akagaki, and TFO; (6) Breach of Duty of Loyalty against Akagaki and

Laffer; (7)Tortious Inducement to Breach Duty of Loyalty against Holzman, Akagaki, and TFO; (8) Unfair Competition against Holzman, Akagaki, and TFO; and (9) Interference with Prospective Economic Advantage against all defendants. Dkt. 1. On November 27, 2019, this court heard plaintiff's motion for temporary restraining order and on the same day denied the TRO motion, denied plaintiff's motion for expedited discovery, and granted plaintiff's motion to preserve evidence. Dkt. 19. Then, on January 10, 2020, defendants filed the present motion to dismiss and move to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 26.

Albert's is a California corporation that imports and distributes specialty produce throughout the United States. In May 2011, Albert's entered into negotiations to purchase Purity Organic Holdings, Inc. d/b/a Pacific Organic Produce ("PACO"), a California corporation, which was a broker and distributor of produce. PACO was owned by defendants Holzman and Akagaki, who are both California citizens. Compl. ¶¶ 3, 11–12. In August 2012, the parties executed an asset purchase agreement pursuant to which Albert's purchased substantially all of PACO's assets, including its intellectual property and trade secrets. Id. ¶ 4. As a condition of the purchase agreement, Albert's offered employment to Holzman and Akagaki.

Holzman and Akagaki entered into Employment Agreements with Albert's on or about August 16, 2012. Id. ¶¶ 19–20. Laffer, a California citizen and a PACO employee, signed an Employment Agreement with Albert's in September 2012. Id. ¶¶ 13, 22. The Employment Agreements required defendants to only use Albert's confidential and proprietary information and trade secrets for Albert's legitimate business purposes. Id. ¶ 23. Holzman, Akagaki, and Laffer also agreed that should they desire to work in a competing business while employed by Albert's, that they would seek Albert's permission to proceed. Id. They also agreed to return all of Albert's confidential, proprietary and trade secret information at the termination of their employment. Id. Holzman, Akagaki, and Laffer worked for Albert's for years and continued to develop and expand Albert's confidential, proprietary and trade secret information associated with the supply,

2

distribution and marketing of organic produce.

In March 2018, Holzman was terminated from employment with Albert's.  Id. ¶ 31. Within days, he corresponded with one or more competitors of Albert's, disclosing confidential, proprietary, and trade secret information in an effort to recruit Albert's customers, suppliers, and key employees and announcing that he intended to launch his own competing business.  Id. ¶ 32.  Holzman's correspondence included the names of Albert's customers and suppliers, employees, pricing and financing resources, potential venture partners, key confidential business relationships, and key business information such as Albert's plans to expand and develop certain markets, Albert's investment commitments, profitability, Albert's business model, product sources, and import volumes.  Id. ¶ 33.

In addition, Holzman enlisted Akagaki in his efforts to establish a competing business while Akagaki was still employed by Albert's.  Id. ¶ 34.  The two attempted to enlist other highly experienced Albert's employees to compete against Albert's.  Id.  At some point, Holzman commenced competition with Albert's through solicitation of business partners and investors that he learned as an employee at Albert's.  Id. ¶ 36. Holzman eventually formed a new competing company called TerraFresh Organics, LLC. Plaintiff alleges that Akagaki joined Holzman in and around March 2018.  Id. ¶ 34. Akagaki remained employed at Albert's until on or about January 4, 2019, when Akagaki's employment with Albert's ended.  Id. ¶ 37.

By spring 2019, TFO hired Laffer, while Laffer was still employed by Albert's, as TFO's Vice-President of Sales.  Id. ¶ 38.  Prior to June 17, 2019, while still employed by Albert's, Laffer registered to attend an industry summit as a TFO representative and TFO publicized that Laffer and Holzman would attend the summit as TFO representatives.  Id. ¶¶ 39, 42.  Laffer sent in his letter of resignation on June 20, 2019.  Id. ¶ 43.  Albert's alleges, on information and belief, that defendants utilized Albert's confidential, proprietary and trade secret information to solicit business relationship for the benefit of TFO.  Id. ¶ 44.

**DISCUSSION**

**A.     Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, 349 F.3d 1191, 1199–1200 (9th Cir. 2003).  Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).  The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment.  Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

**B.     Analysis**

**1.     First and Second Claims:  Misappropriation of Trade Secrets**

Plaintiff's first and second causes of action are brought against Holzman, Akagaki, and TFO for violations of the federal Defend Trade Secrets Act ("DTSA") and the California Uniform Trade Secrets Act ("CUTSA"), respectively.  "To state a claim for trade

secret misappropriation under the DTSA and the CUTSA, a plaintiff must allege that: '(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff.'" <u>Alta Devices, Inc. v. LG Elecs., Inc.</u>, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018).

### a.   Whether Albert's Owned a Trade Secret

The DTSA defines "trade secret" as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3).  The California UTSA defines a "[t]rade secret" as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that:  (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Cal. Civ. Code § 3426.1(d).  "'Information' has a broad meaning under the [CUTSA]." <u>Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.</u>, 226 Cal. App. 4th 26, 53 (Ct. App. 2014).

> The definition of trade secret is . . . unlimited as to any particular class or kind of matter and may be contrasted with matter eligible for patent or copyright protection, which must fall into statutorily defined categories.  A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.  It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device or list of customers.

<u>Altavion</u>, 226 Cal. App. 4th at 53 (citations omitted).  District courts analyze DTSA and

CUTSA's pleading requirements together.  <u>Alta Devices</u>, 343 F. Supp. 3d at 880–81.

"[C]ourts are 'in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets."  <u>Autodesk, Inc. v. ZWCAD Software Co.</u>, No. 5:14-CV-01409-EJD, 2015 WL 2265479, at *6 (N.D. Cal. May 13, 2015).  Accordingly, a "plaintiff need not spell out the details of the trade secret," but it must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies."  <u>Alta Devices</u>, 343 F. Supp. 3d at 881 (citations, internal quotation marks and alterations omitted); <u>see also</u> <u>Vendavo, Inc. v. Price f(x) AG</u>, No. 17-cv-06930-RS, 2018 WL 1456697, at *3–4 (N.D. Cal. Mar. 23, 2018) (rejecting the following allegations as insufficiently-specific:  "source code, customer lists and customer related information, pricing information, vendor lists and related information, marketing plans and strategic business development initiatives, 'negative knowhow' learned through the course of research and development, and other information related to the development of its price-optimization software, including ideas and plans for product enhancements).

Here, defendants argue that the allegations lack specificity to put them on notice of the trade secret.  Mtn. at 5.  Plaintiff alleges the following as its trade secrets:  "customer information, supplier information, pricing, financing, sales volume, potential customer and venture partners, import volumes, personnel files and records, customer lists, proposed or contemplated investments, financial records, other internally generated studies and reports, among other things, to protect its investments and trade secret information."  Compl. ¶ 27.  Several of the categories lack particularity to put defendants on notice as to the specific trade secret at issue.  These include supplier information, pricing, financing, personnel files and records, proposed and contemplated investments, financial records, and other internally generated studies and reports.  These items are similar to the list of

purported trade secrets that the district court rejected in <u>Vendavo</u> and, thus, are not pled with sufficient particularity to constitute trade secrets. A few items—potential customer and venture partners and import volumes—are more specific, but ultimately reflect broad, categorical terms.

Plaintiff's customer-related information requires a more detailed review. Courts have frequently held that customer-related information qualifies as a trade secret, especially if a plaintiff has spent "considerable time, effort, and resources," in developing some of that information. <u>MAI Sys. Corp. v. Peak Comput., Inc.</u>, 991 F.2d 511, 521 (9th Cir. 1993) (holding that, under CUTSA, soliciting of customers of former firm constituted trade secret misappropriation); <u>see also</u> <u>H.Q. Milton, Inc. v. Webster</u>, No. 17-CV-06598-PJH, 2017 WL 5625929, at *3 (N.D. Cal. Nov. 22, 2017) (finding "customer list and contact information, sales leads, customer interests, and [plaintiff's] proprietary pricing" constituted trade secrets); <u>Henry Schein, Inc. v. Cook, No.</u>, 16-03166C, 2016 WL 3418537, at *4 (N.D. Cal. June 22, 2016) (holding customer information, margins, and profit percentages used to gain an advantage over competitors were protectable as trade secrets); <u>Brocade Commc'n Sys. Inc. v. A10 Networks, Inc.</u>, 873 F. Supp. 2d 1192, 1214 (N.D. Cal. 2012) ("[C]ustomer-related information including . . . pricing guidelines . . . and customers' business needs/preferences . . . is routinely given trade secret protection."). Similarly, California courts have held that where a party made reasonable efforts to maintain the secrecy of its customer list, then such a list would constitute a trade secret. <u>Morlife, Inc. v. Perry</u>, 56 Cal. App. 4th 1517, 1521 (Ct. App. 1997) ("As a general principle, the more difficult information is to obtain, and the more time and resources expended by an employer in gathering it, the more likely a court will find such information constitutes a trade secret." (citing <u>Courtesy Temporary Serv., Inc. v. Camacho</u>, 222 Cal. App. 3d 1278, 1287 (Ct. App. 1990))).

Applying here, plaintiff alleges that it developed, maintained, and safeguarded its customer information at great expense. Compl. ¶ 27. Defendants Holzman, Akagaki, and Laffer were all trained on the importance of maintaining the confidentiality of Albert's

specific customers.  Id. ¶ 29.  Finally, plaintiff identifies the customer information in more detail in paragraph 33 alleging that Holzman sent to prospective business partners "the names of Albert's customers and suppliers, the names of key employees to be poached and the total percentage of annual corporate sales made by those key employees, pricing and financing resources, potential venture partners, key confidential business relationships, including Albert's plans to expand and develop certain markets, Albert's investment commitments, [and] profitability."  Id. ¶ 33.  These allegations are sufficient to demonstrate that plaintiff took efforts to keep its customer information secret.  They are also sufficient to demonstrate specificity regarding the customer information.  In MAI Systems, 991 F.2d at 521, the Ninth Circuit affirmed a finding that a customer database constituted a trade secret because the database "allow[ed] a competitor . . . to direct its sales efforts to those potential customers already using the [plaintiff's] computer system. Further, [the plaintiff] took reasonable steps to insure the secrecy to this information as required by UTSA."  Similar reasoning is applicable here: Albert's customer information could be used to solicit its customers and Albert's took reasonable steps to insure the secrecy of the customer information.

Accordingly, plaintiff has established a trade secret with regard to its customer information but has not established a trade secret in the remaining items listed in paragraph 27.

### b.    Whether Defendants Misappropriated Plaintiff's Trade Secrets

"Under the DTSA and CUTSA, 'misappropriation' means either the '(1) [a]cquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means;' or the '(2) [d]isclosure or use of a trade secret of another without express or implied consent.'"  Alta Devices, 343 F. Supp. 3d at 882 (quoting 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b)).

Here, defendants argue that the complaint lacks a clear statement of how defendants are alleged to have used any information from Albert's.  Mtn. at 6.  Plaintiff alleges that in March 2018, Holzman sent correspondence to prospective business

United States District Court
Northern District of California

partners describing a proposed plan to create a competing business. Compl. ¶ 32. Plaintiff further alleges that Holzman's correspondence included the names of Albert's customers and suppliers, the names of key employees to be "poached" and the total percentage of annual corporate sales made by those key employees, pricing and financing resources, potential venture partners, key confidential business relationships, and other confidential information. Id. ¶ 33. Holzman disclosed Albert's trade secret—its customer information—without Albert's consent. Accordingly, plaintiff has sufficiently alleged that defendants misappropriated its trade secret.

### c.     Resulting Damage

"California courts have presumed irreparable harm when proprietary information is misappropriated." TMX Funding, Inc. v. Impero Techs., Inc., No. C 10-00202 JF (PVT), 2010 WL 1028254, at *8 (N.D. Cal. Mar. 18, 2010). Plaintiff alleges that it has lost business and client relationships as a result of the harm. Compl. ¶ 50. This allegation, combined with the presumption of irreparable harm, is a sufficient allegation of damage.

For the foregoing reasons, defendants' motion to dismiss plaintiff's first and second causes of action for misappropriation of trade secrets is DENIED.

### 2.     CUTSA Supersession

Having determined that plaintiff has stated a claim under CUTSA, the court must determine whether CUTSA supersedes plaintiff's other claims. Defendants contend that CUTSA is a comprehensive statutory scheme that displaces plaintiff's remaining claims (other than those based on contractual remedies, which are recoverable under CUTSA). Mtn. at 14. "Under California law, CUTSA provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based upon misappropriation of a trade secret. It therefore supersedes claims—including section 17200 claims— based on the same nucleus of facts as trade secret misappropriation." Waymo LLC v. Uber Tech., Inc., 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017); see Cal. Civ. Code § 3426.7; Alta Devices, Inc. v. LG Elecs., Inc., No. 18-CV-00404-LHK, 2019 WL 1924992, at *6 (N.D. Cal. Apr. 30, 2019) (same); see also SunPower Corp. v. SolarCity

Corp., No. 12-CV-00694-LHK, 2013 WL 6160472, at *3 (N.D. Cal. Dec. 11, 2012) ("If there is no material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA claim preempts the other claim."). "At the pleadings stage, the supersession analysis asks whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action." Waymo, 256 F. Supp. 3d at 1062.

Additionally, courts in this district, relying on Silvaco Data Systems v. Intel Corp., 184 Cal. App. 4th 210, 239 n.22 (Ct. App. 2010), overruled on other grounds by Kwikset Corp., 51 Cal. 4th at 337, hold that CUTSA preempts non-trade secret confidential information misappropriation claims. See, e.g., Alta Devices, 2019 WL 1924992, at *6 (collecting cases). Silvaco Data Systems stated "[i]f the plaintiff identifies no property right outside of trade secrets law, then he has no remedy outside that law, and there is nothing unsound or unjust about holding other theories superseded." 184 Cal. App. 4th at 239. There are two exceptions. First, a non-trade secret claim is not superseded if the plaintiff's property right in the confidential information "stems from some provision of positive law on grounds qualitatively different from grounds upon which trade secrets are considered property," or, second, there is no supersession where the claim alleges "wrongdoing materially distinct from the wrongdoing alleged in a CUTSA claim." Waymo, 256 F. Supp. 3d at 1063. However, claims relying on misappropriation of non-trade-secret confidential information and not meeting one of the two exceptions are superseded. Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc., No. 16-CV-03737-JCS, 2017 WL 412524, at *6 (N.D. Cal. Jan. 31, 2017) ("CUTSA preemption extends to claims based on the misappropriation of confidential and proprietary information, regardless of whether it qualifies as a 'trade secret.'").

Finally, CUTSA does not affect "contractual remedies" whether or not based upon misappropriation and further does not prohibit "civil remedies" so long as the civil remedies "are not based upon misappropriation of a trade secret." Civ. Code § 3426.7(b); Silvaco Data Sys., 184 Cal. App. 4th at 233.

Defendants argue supersession applies to plaintiff's fourth through ninth causes of action because they all rely on plaintiff's misappropriation claim. Mtn. at 14. Plaintiff contends that the question of whether claims are displaced by CUTSA is a fact-based inquiry better suited for summary judgment or trial. Opp. at 10–11. While the court discusses the preemption analysis in greater depth below, CUTSA supersedes plaintiff's fifth, eighth and ninth claims.

Plaintiff's fifth claim alleges defendants used wrongful means—misappropriated trade secrets, confidential information, and unlawful business tactics—to induce Albert's clients. Compl. ¶ 85. The factual allegations all involve misappropriation of trade secrets and non-trade secret confidential information. Plaintiff's eighth claim is based entirely on defendants' stealing "confidential and trade secret information." Id. ¶ 106. Plaintiff's ninth claim relies on soliciting trade secrets and confidential information as the intentional act to disrupt plaintiff's business relationships with its customers and suppliers. Id. ¶ 112. Finally, plaintiff has not demonstrated either an independent, positive-law property right or wrongdoing materially distinct from the misappropriation; therefore, CUTSA supersession applies. However, because the court is not convinced that amendment of these superseded claims would necessarily be futile, plaintiffs shall have leave to amend their complaint.

Plaintiff's fourth claim requires Albert's to allege an independent wrongful act—it has identified two: misappropriation of trade secrets and breach of defendants' contractual obligations to disclose and seek Albert's permission before pursuing outside economic opportunities. To the extent the claim is based on misappropriation of trade secrets or confidential information, CUTSA supersedes the claim. However, to the extent the claim relies on breach of contractual obligations other than misappropriation, it is not superseded. Plaintiff's sixth and seventh claims are based on Akagaki and Laffer's fiduciary duty to Albert's. The alleged breach of their fiduciary duty was broader than disclosing trade secrets or confidential information and included a duty not to compete against one's current employer (i.e., a duty of loyalty). See ChromaDex, Inc. v. Elysium

11

Health, Inc., 369 F. Supp. 3d 983, 989 (C.D. Cal. 2019) ("CUTSA does not preempt breach of fiduciary duty claims where those claims are not premised on the taking or use of confidential information." (citing Angelica Textile Servs., Inc. v. Park, 220 Cal. App. 4th 495, 506 (Ct. App. 2013)). Therefore, the sixth and seventh survive CUTSA preemption.

### 3. Third Claim: Breach of Contract

Plaintiff's third claim is for breach of contract against Holzman, Akagaki, and Laffer. To plead a claim for breach of contract under California law, a plaintiff must allege: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." Appling v. Wachovia Mortg., FSB, 745 F. Supp. 2d 961, 974 (N.D. Cal. 2010) (quoting CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (Ct. App. 2008)). Defendants advance two arguments why the breach of contract claim should be dismissed.

First, defendants contend that plaintiff has not attached the operative agreements to the complaint, nor has plaintiff sufficiently alleged the legal effect of the agreements. Mtn. at 8. "To state a cause of action for breach of contract, it is absolutely essential to plead the terms of the contract either in haec verba or according to legal effect." Langan v. United Servs. Auto. Ass'n, 69 F. Supp. 3d 965, 979 (N.D. Cal. 2014) (citing Twaite v. Allstate Ins. Co., 216 Cal. App. 3d 239, 252 (Ct. App. 1989)). "A plaintiff fails to sufficiently plead the terms of the contract if he does not allege in the complaint the terms of the contract or attach a copy of the contract to the complaint." Id. (citing Twaite, 216 Cal. App. 3d at 252). "While it is unnecessary for a plaintiff to allege the terms of the alleged contract with precision, the Court must be able generally to discern at least what material obligation of the contract the defendant allegedly breached." Id. (citing James River Ins. Co. v. DCMI, Inc., C 11–06345 WHA, 2012 WL 2873763 at *3 (N.D. Cal. July 12, 2012)).

Plaintiff alleges that Holzman, Akagaki, and Laffer each entered into an employment agreement with Albert's and provides the date of each agreement. Compl.

¶¶ 19–20, 22.  The complaint further alleges that each agreement required the respective party to only use Albert's confidential, proprietary, and trade secret information for legitimate business purposes, safeguard such information, comply with Albert's acceptable use policies, return all of Albert's information in their possession when their employment ceased, and disclose and obtain approval for engaging in competing business activities during the term of their employment.  Id. ¶ 23.  These allegations are sufficient to permit defendants to discern the material obligations (i.e., complying with acceptable use policy or safeguarding trade secrets and confidential information) that they allegedly breached and, thus, are sufficient to meet the first element, the existence of a contract.

Second, defendants argue that plaintiff's breach of contract claim is coextensive with (or derivative of) its trade secret claims.  Mtn. at 8.  Accordingly, defendants contend that, to the extent there is no plausible allegation of a trade secret, there is no breach of the contract.  Id.  Because plaintiff has alleged a valid misappropriation of trade secrets claim, then defendants' argument fails.  Moreover, the breach of contract claim is not coextensive with the misappropriation of trade secret claims.  Plaintiff alleges that the employment agreements required defendants to safeguard not just Albert's trade secrets, but also any "confidential and proprietary information."  Compl. ¶ 23.  Trade secrets are defined by statute, but terms such as confidential and proprietary information are defined by the contract.  Thus, a defendant may breach a contract for disclosing confidential information that does not constitute a trade secret.  Because there are two independent bases for finding breach, plaintiff has met the third element of a breach of contract claim.

With regard to the second element, neither party disputes that plaintiff performed its obligations.  With regard to the fourth element, plaintiff alleges that it has been damaged by the breach of contract and defendants do not dispute the damages element.  For the foregoing reasons, defendants' motion to dismiss plaintiff's third cause of action for breach of contract is DENIED.

**4.**      **Fourth Claim:  Tortious Inducement to Breach of Contract**

1    Plaintiff brings a claim for tortious inducement to breach of contract against

2    defendants Holzman, Akagaki, and TFO.  To state a cause of action for intentional

3    interference (i.e., tortious inducement) with contractual relations, a plaintiff must show:

4    "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this

5    contract; (3) defendant's intentional acts designed to induce a breach or disruption of the

6    contractual relationship; (4) actual breach or disruption of the contractual relationship;

7    and (5) resulting damage."  Pac. Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal. 3d 1118,

8    1126 (1990) (citations omitted).

9    Defendants advance two arguments in response to this claim.  First, they argue

10   plaintiff's allegations are vague and conclusory.  Mtn. at 8–9.  Second, defendants

11   contend that, because California presumes an "at-will" employment relationship, plaintiff

12   cannot, as a matter of law, maintain a claim for tortious inducement to breach of contract.

13   Id. at 9.

14   First, the complaint is not so vague and conclusory as to warrant dismissal.

15   Plaintiff alleges that employment agreements existed between Albert's and its employees

16   and that defendants knew of the terms of those agreements.  Compl. ¶¶ 74–75.  These

17   allegations are sufficient to meet the first and second elements of the claim.  On

18   information and belief, plaintiff contends that Holzman induced Akagaki to breach his

19   contractual obligations to Albert's and that Holzman, Akagaki, and TFO induced Laffer to

20   breach his obligations.  Id. ¶¶ 76–79.  These allegations are conclusory and restate the

21   elements of the claim.

22   However, the complaint goes beyond these conclusory allegations to allege the

23   following wrongful, intentional acts:  in and around March 2018, Holzman recruited

24   Akagaki to join him in the plan to compete against Albert's, while Akagaki remained

25   employed at Albert's.  Id. ¶ 34.  Holzman and Akagaki then directly recruited other

26   Albert's employees to provide trade secrets to Holzman to develop a business model for

27   competing with Albert's.  Id.  These factual allegations, which the court must accept as

28   true, demonstrate defendants' intentional conduct to induce Albert's employees to breach

14

their contracts by sharing trade secrets and confidential information and that Akagaki and

Laffer did not receive permission to pursue outside economic opportunities.  This is

sufficient to meet the third element.  Because plaintiff has stated a claim for breach of

contract, it meets the fourth element with respect to Akagaki and Laffer's breach of their

contracts.[1]

Second, defendants argue a tortious inducement claim cannot be brought with

regard to "at-will" employment.  Mtn. at 9.  Because California law presumes at-will

employment, defendants argue plaintiff's fourth claim cannot be brought as a matter of

law under the theory that if an employee can end his or her employment at will, a

defendant cannot improperly induce that employee to end employment that can be

terminated at any time.

The California Supreme Court's opinion in Reeves v. Hanlon, 33 Cal. 4th 1140,

1144 (2004), is particularly relevant to this claim.  Reeves examined whether a plaintiff

could state a claim for intentional interference with contractual relations in the context of

an at-will employment.  There, the court held

> that a plaintiff may recover damages for intentional interference
> with an at-will employment relation under the same California
> standard applicable to claims for intentional interference with
> prospective economic advantage.  That is, to recover for a
> defendant's interference with an at-will employment relation, a
> plaintiff must plead and prove that the defendant engaged in an
> independently wrongful act—i.e., an act "proscribed by some
> constitutional, statutory, regulatory, common law, or other
> determinable legal standard"—that induced an at-will employee
> to leave the plaintiff.

Reeves, 33 Cal. 4th at 1152–53 (emphasis added) (quoting Korea Supply Co. v.

Lockheed Martin Corp., 29 Cal. 4th 1134, 1159 (2003)).  Thus, to maintain a cause of

action for intentional inducement of contractual relations, plaintiff must plead that

defendants engaged in an independently wrongful act.  See also Ixchel Pharma, LLC v.

---

[1] The complaint alleges that "TFO, Holzman and Akagaki knowingly and intentionally induced Laffer and other of Albert's employees to breach contractual obligations." Compl. ¶ 79.  Plaintiff has not alleged sufficient facts to identify these other employees or their contracts or how Holzman and Akagaki induced them to breach those contracts.

Biogen, Inc., 930 F.3d 1031, 1037 (9th Cir. 2019) ("The California Supreme Court subsequently determined [in Reeves] that in order to state a claim for an intentional interference with contractual relations in the context of an at-will employment contract, a plaintiff also has to plead an independently wrongful act." (citation omitted)).

Plaintiff has pled two independently wrongful acts. First, plaintiff alleges misappropriation of trade secret claims. For example, plaintiff alleges that Holzman induced Akagaki and Laffer to breach their respective confidentiality obligations to Albert's. Compl. ¶¶ 76–77. As noted above, CUTSA supersedes this portion of the claim because it relies entirely on misappropriation. However, plaintiff also alleges that Akagaki and Laffer breached their contracts by failing to disclose and seek permission from Albert's before pursuing economic opportunities in competition with Albert's. Id. ¶¶ 78–79. This wrongful conduct does not involve misappropriation of trade secrets or confidential information and is not superseded. Finally, plaintiff alleges defendants' conduct caused it harm, which is sufficient to meet the fifth element.

For foregoing reasons, defendants' motion to dismiss plaintiff's fourth cause of action for tortious inducement to breach of contract is DENIED.

## 5. Fifth Claim: Tortious Interference with Business Relationship/Contract

Plaintiff's fifth cause of action is for tortious interference with business relationship/contract between Albert's and its customers and business partners alleged against defendants Holzman, Akagaki, and TFO. As with the fourth claim, the elements to state a cause of action for intentional interference with contractual relations are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." Pac. Gas & Elec., 50 Cal. 3d at 1126. A plaintiff may bring a tortious interference tort where the defendant induces "a party to a contract to terminate the contract according to its terms." Id. at 1127. A plaintiff may also bring the claim

where a defendant's interference "makes enjoyment of a contract more expensive or burdensome." Id.

As an initial matter, the law is not clear whether Reeves requires plaintiff to plead an independent wrongful act where, as here, the contract at issue is not employment related. See Ixchel Pharma, 930 F.3d at 1038 (certifying question to California Supreme Court whether Reeves' wrongful-act requirement applies only in the context of at-will employment contracts). Regardless of how the California Supreme Court answers this question, CUTSA supersedes plaintiff's claim.

To demonstrate defendant's intentional acts, plaintiff alleges misappropriation of trade secrets, wrongful use of confidential information, and unlawful business tactics. Paragraph 85 sums up the wrongful means defendants used:

> Albert's is informed and believes and, based thereon, alleges that Defendants have induced or attempted to induce Albert's customers, suppliers, and current venture partners to work with Defendants instead of Albert's, using wrongful means. Upon information and belief, Defendants' interference has been accomplished using wrongful means including, but not limited to, Defendants' wrongful use of misappropriated trade secrets, Albert's confidential information and unlawful business tactics.

Compl. ¶ 85. These allegations demonstrate that misappropriation and use of confidential information are necessary to plaintiff's claim. While the complaint references "unlawful business tactics," it does not further elaborate on what such conduct entailed or how it supports the claim. Without the misappropriation-related conduct, plaintiff has not alleged an intentional act and, therefore, the claim is preempted by CUTSA.

For the foregoing reasons, defendants' motion to dismiss plaintiff's fifth claim for tortious interference with business relationships/contract is GRANTED.

### 6. Sixth Claim: Breach of Duty of Loyalty

Plaintiff alleges a breach of duty of loyalty claim against Akagaki and Laffer based on their conduct while employed by Albert's. "To establish a breach of fiduciary duty, a plaintiff must show '(1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach.'" Second Measure, Inc. v. Kim, 143 F.

Supp. 3d 961, 979 (N.D. Cal. 2015) (quoting <u>People ex rel. Harris v. Rizzo</u>, 214 Cal. App. 4th 921, 950 (Ct. App. 2013)).

### a. Existence of Fiduciary Duty

Defendants do not contest that Akagaki and Laffer had a fiduciary duty to Albert's. <u>See</u> Mtn. at 10–11. Because defendants do not oppose this element, the court finds that plaintiff has sufficiently alleged the existence of a fiduciary duty.[2]

### b. Breach of Fiduciary Duty

With respect to breach of the fiduciary duty, the parties both contend <u>Bancroft-Whitney</u> help their respective cases. There, the California Supreme Court dealt with the extent to which a corporate officer may prepare to leave his current employer before such conduct amounts to a breach of the officer's fiduciary duty. <u>See</u> <u>Bancroft-Whitney</u>, 64 Cal. 2d at 345–46. In <u>Bancroft-Whitney</u>, the president of a publishing company signed a contract with a competitor but remained employed with his first employer for a month. During that time, he provided the competitor with a list of employees, their current salaries, and solicited those employees to come work with him at the new company. <u>Id.</u> at 330–31. The court noted that, generally, an officer may prepare to compete prior to resigning his office. <u>Id.</u> at 346. However, the court reasoned that an officer may not

[2] Plaintiff cites California Labor Code sections 2860 and 2863 as the source of the fiduciary duty. "There are two kinds of fiduciary duties—those imposed by law and those undertaken by agreement." <u>GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.</u>, 83 Cal. App. 4th 409, 416 (Ct. App. 2000) (citations omitted), <u>overruled on other grounds by</u> <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140 (2004). "Fiduciary duties are imposed by law in certain technical, legal relationships such as those between partners or joint venturers, husbands and wives, guardians and wards, trustees and beneficiaries, principals and agents, and attorneys and clients." <u>Id.</u> The court notes that California law does not clearly state whether all employees (including lower-level employees) owe a fiduciary duty to their employer. <u>Compare</u> <u>GAB Bus. Servs.</u>, 84 Cal. App. 4th at 420–21 ("[A]n officer who participates in management of the corporation, exercising some discretionary authority, is a fiduciary of the corporation as a matter of law. Conversely, a 'nominal' officer with no management authority is not a fiduciary. Whether a particular officer participates in management is a question of fact."), <u>with</u> <u>Erhart v. BofI Holding, Inc.</u>, 387 F. Supp. 3d 1046, 1055 (S.D. Cal. 2019) ("During the term of employment, an employer is entitled to its employees' 'undivided loyalty.'" (quoting <u>Fowler v. Varian Assocs., Inc.</u>, 196 Cal. App. 3d 34, 41 (Ct. App. 1987))). However, because defendants do not oppose this element and the parties have not briefed this issue, the court need not opine further on whether Akagaki or Laffer owed a fiduciary duty.

solicit customers or do other acts in direct competition to the current business prior to leaving that business. Id. at 346 n.10. The court determined that the officer breached his fiduciary duty when "he supplie[d] the competitor with a selective list of the corporation's employees . . . together with the salary the corporation [was] paying the employee and a suggestion as to the salary the competitor should offer in order to be successful in recruitment." Id. at 350–51.

Defendants argue that Akagaki and Laffer were only working with Holzman to identify business opportunities (i.e., preparing to compete) and therefore did not breach their duty to Albert's. Mtn. at 10. Plaintiff responds that the complaint includes several factual allegations of actions by Laffer and Akagaki, while employed by Albert's, that go beyond preparing to leave. Opp. at 16–17.

The facts here are similar to the direct competition outlined in and prohibited by Bancroft-Whitney. For instance, plaintiff alleges that Laffer "commenced working for TFO" while employed by Albert's and did not disclose his employment with TFO to Albert's. Compl. ¶ 92. Akagaki and Holzman recruited other Albert's employees to provide trade secrets to Holzman in order for Holzman to develop a competing business model. Id. ¶ 34; cf. Bancroft-Whitney, 64 Cal. 2d at 346 n.10 ("Comment e of section 393 of the Restatement Second of Agency provides that an agent can make arrangements to compete with his principal even before the termination of the agency, but that he cannot properly use confidential information peculiar to his employer's business and acquired therein."). Therefore, plaintiff meets the second element.

### c.    Damage and Economic Loss Rule

Plaintiff alleges that it was proximately damaged by Akagaki and Laffer's acts, which defendants do not contest. Rather, defendants contend that the economic loss rule bars a duty of loyalty claim because the claim is actually a breach of contract claim. Mtn. at 10.

The economic loss rule provides:

> Where  a  purchaser's  expectations  in  a  sale  are  frustrated

19

> because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic losses." This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts.

Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 988 (2004) (internal quotation marks omitted) (quoting Neibarger v. Universal Coops., Inc., 486 N.W.2d 612, 615 (Mich. 1992)). The predicate for applying the economic loss rule is breach of a contract. See id. at 989–90; see also Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 873 (9th Cir. 2007) ("The economic loss doctrine provides that certain economic losses are properly remediable only in contract.").

Here, plaintiff's breach of duty of loyalty claim is a based on a breach of fiduciary duty and plaintiff does not allege the duty arose by contractual obligation. The fiduciary duty, therefore, arises as a matter of law. See GAB Bus. Servs., 83 Cal. App. 4th at 416. Accordingly, the economic loss rule is not applicable. For the foregoing reasons, defendants' motion to dismiss plaintiff's sixth claim for breach of fiduciary duty is DENIED.

### 7. Seventh Claim: Tortious Inducement to Breach of Duty of Loyalty

Defendants argue that there is no cause of action for tortious inducement to breach the duty of loyalty. Mtn. at 12. Plaintiff responds that inducement to breach the duty is recognized and cites cases that purport to stand for that proposition. Opp. at 18.

"Under California law, inducement of breach of fiduciary duty is not a cognizable cause of action." Dung Dang v. Citimortgage, Inc., No. SACV09-00858-CJC, 2010 WL 11520161, at *2 (C.D. Cal. Mar. 11, 2010) (citing 1–800 Contacts, Inc. v. Steinberg, 107 Cal. App. 4th 568, 588 (Ct. App. 2003)). Instead, California courts construe inducement claims as either conspiracy to breach a fiduciary duty or aiding and abetting a breach of fiduciary duty. See 1-800 Contacts, 107 Cal. App. 4th at 588 & n.15. Indeed, a case cited by plaintiff analyzed a third party's encouragement to breach a fiduciary duty under

United States District Court

Northern District of California

an aiding and abetting framework. Opp. at 18 (citing <u>Nasrawi v. Buck Consultants LLC</u>, 231 Cal. App. 4th 328 (Ct. App. 2014)).

"The elements of a claim for aiding and abetting a breach of fiduciary duty are: (1) a third party's breach of fiduciary duties owed to plaintiff; (2) defendant's actual knowledge of that breach of fiduciary duties; (3) substantial assistance or encouragement by defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in causing harm to plaintiff." <u>Nasrawi</u>, 231 Cal. App. 4th 328, 343 (citations omitted).

Because plaintiff sufficiently pleads its sixth claim for breach of fiduciary duty by Akagaki and Laffer, that finding establishes the first element here. With regard to the second element, Holzman, as a former Albert's employee, had actual knowledge of Akagaki and Laffer's duty to Albert's. <u>E.g.</u>, Compl. ¶ 19. With respect to the third element, plaintiff alleges an affirmative step by Holzman because: "Holzman recruited Akagaki to join him in the plan to compete against Albert's" and "Holzman and Akagaki then directly recruited other of Albert's key employees to provide Albert's Trade Secrets." <u>Id.</u> ¶ 34. Further, Laffer attended an industry summit while he was employed by Albert's, but TFO paid for Laffer's registration to attend the summit. <u>Id.</u> ¶ 40. Plaintiff alleges that Laffer registered to attend as a vice president for TFO and TFO publicized that Laffer and Holzman would attend the summit as representatives of TFO. <u>Id.</u> ¶¶ 39, 41. These allegations are sufficient to demonstrate substantial assistance or encouragement from Holzman and TFO to Akagaki and Laffer to breach their respective duties meeting the third element.

This claim is also brought against Akagaki, but plaintiff only alleges that he assisted or encouraged unnamed Albert's employees to breach their duties. <u>Id.</u> ¶ 101. Because the details as to Akagaki's role are unclear, there are not sufficient allegations to show substantial assistance or encouragement. Finally, it is plausible that Holzman's actions resulting in Akagaki's and Laffer's breaches were a substantial factor in causing harm to plaintiff.

For the foregoing reasons, defendants' motion to dismiss plaintiff's seventh cause of action for inducement of breach of fiduciary duty (properly understood as aiding and abetting a breach of fiduciary duty) as alleged against Holzman and TFO is DENIED. Defendants' motion to dismiss plaintiff's seventh claim as alleged against Akagaki is GRANTED.

### 8.      Eighth Claim:  Unfair Competition

Plaintiff's eighth cause of action is for a violation of California's unfair competition law ("UCL").  Defendants argue that the unfair competition law only remedies a loss of money or property and because plaintiff seeks restitution of profits, then its claim under the unfair competition law is barred.  Mtn. at 12.

The UCL creates a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent.  Cal. Bus. & Prof. Code. § 17200.  Each "prong of the UCL [provides] a separate and distinct theory of liability." Lozano v. AT & T Wireless Servs., Inc., 504 F.3d 718, 731 (9th Cir. 2007); see also Imax Corp. v. Cinema Techs., Inc., 152 F.3d 1161, 1169 (9th Cir. 1998) (discussing common law unfair competition).  Here, plaintiff's UCL claim is premised on Akagaki and Holzman's theft of "confidential and proprietary trade secret information" and use of that information to induce Albert's clients to conduct business with TFO instead.  Compl. ¶ 106.  The complaint goes on to state "[d]efendants knew that by stealing Albert's confidential and proprietary information without express permission . . . they were engaging in unfair business practice in violation of California law, including in violation of California Civil Code sections 3426 et seq. and the Defend Trade Secrets Act." Id. ¶ 107.  These allegations rely exclusively on misappropriation of trade secrets and confidential information.  Accordingly, CUTSA supersedes the UCL claim.

For the foregoing reasons, defendants' motion to dismiss plaintiff's eighth cause of action for violation of UCL is GRANTED.

### 9.      Ninth Claim:  Interference with Prospective Economic Advantage

Plaintiff's final claim is for interference with prospective economic advantage.  The

elements of interference with prospective economic advantage are:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

Korea Supply, 29 Cal. 4th at 1153. "[I]nterference with prospective economic advantage requires a plaintiff to allege an act that is wrongful independent of the interference itself." CRST Van Expedited, Inc. v. Werner Enters., Inc., 479 F.3d 1099, 1108 (9th Cir. 2007) (citing Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 392–93 (1995)).

The dispositive element here is the independently wrongful act. Plaintiff alleges that on or about March 3, 2018, "Holzman sent correspondence to prospective business partners laying out a proposed plan to recreate PACO by poaching Albert's customers, suppliers and key employees." Compl. ¶ 32. The correspondence included the names of Albert's customers and suppliers. Id. ¶ 33. These allegations are sufficiently factual to allege an independent wrongful act. Yet these allegations demonstrate that the independent wrongful act here was the misappropriation of trade secrets and non-trade secret confidential information.

Plaintiff contends that the complaint alleges disruption to its business relationships as an independent wrong. Opp. at 21. However, there are no factual allegations elaborating or explaining what "intentional conduct" supports such a business disruption, other than the misappropriation alleged in paragraphs 32 and 33. Because the independent wrongful act involves misappropriation of trade secrets, CUTSA supersedes plaintiff's ninth claim.

For the foregoing reasons, defendants' motion to dismiss plaintiff's ninth cause of action for intentional interference with prospective economic advantage is GRANTED.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiff's first and second causes of action for misappropriation of trade secrets is DENIED; defendants'

motion to dismiss plaintiff's third cause of action for breach of contract is DENIED;

defendants' motion to dismiss plaintiff's fourth cause of action for tortious inducement to

breach contract is DENIED; defendants' motion to dismiss plaintiff's fifth cause of action

for tortious interference with business relations/conduct is GRANTED and the claim is

DISMISSED WITH LEAVE TO AMEND; defendants' motion to dismiss plaintiff's sixth

cause of action for breach of fiduciary duty is DENIED; defendants' motion to dismiss

plaintiff's seventh cause of action for inducement of breach of fiduciary duty as alleged

against Holzman and TFO is DENIED and as alleged against Akagaki is GRANTED and

the claim against Akagaki is DISMISSED WITH LEAVE TO AMEND; defendants' motion

to dismiss plaintiff's eighth cause of action for UCL is GRANTED and the claim is

DISMISSED WITH LEAVE TO AMEND; and defendants' motion to dismiss plaintiff's

ninth claim for interference with prospective economic advantage is GRANTED and the

claims is DISMISSED WITH LEAVE TO AMEND.  Plaintiff shall file any amended

complaint within 21 days of the date of this order.  No new parties or causes of action

may be pleaded without leave of court or the agreement of all defendants.

**IT IS SO ORDERED.**

Dated: March 23, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge